# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**ROBLOR MARKETING GROUP, INC.**

            **Plaintiff,**

    **v.**

**GPS INDUSTRIES, INC.,**
**PROSHOT INVESTORS, LLC,**
**PROLINK HOLDINGS CORPORATION,**
**PROLINK SOLUTIONS, LLC,**
**INTELLIGOLF, INC.,**
**KARRIER COMMUNICATIONS,**
**L1 TECHNOLOGIES, INC.,**
**LINKS POINT, INC.,**
**SKYHAWKE TECHNOLOGIES, LLC,**
**UPLAY, LLC,**
**GOODWIN GOLF GROUP LLC,**
        **AND**
**POLARIS GOLF SYSTEMS, INC.,**

            **Defendants.**

**CASE NO.**
**08-21496-Civ-MORENO/TORRES**

_____/

## DEFENDANT INTELLIGOLF, INC.'S  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND INCORPORATED MEMORANDUM OF LAW

Defendant IntelliGolf, Inc. (IntelliGolf or Defendant), pursuant to Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1406(a), and Local Rule 7.1, moves to dismiss the Complaint in this action as to IntelliGolf as this Court lacks jurisdiction over IntelliGolf and venue in this District is improper.  Pursuant to Local Rule 7.1, Defendant's counsel has contacted Plaintiff's counsel prior to filing the instant motion with the Court and Defendants' Request for Reexamination of U.S. Patent No. 5,507,485 with the United States Patent and Trademark Office and no agreement was reached.

## I. SUMMARY

IntelliGolf, Inc.'s motion to dismiss should be granted because venue is improper in the Southern District of Florida ("SDFL").  Venue is improper in the SDFL since:  1) this Court respectfully lacks personal jurisdiction over this Defendant; 2) the Defendant does not have a regular place of business in the SDFL; 3) the Defendant has not performed any act of

infringement of any of the claims of the patent at issue in the SDFL; and 4) Plaintiff has not even alleged facts that would provide a proper basis to support venue of the Defendant in the SDFL.

## II. FACTS

Roblor Marketing Group, Inc. ("Roblor" or "Plaintiff"), a New York-based corporation with "a place of business" [emphasis added] located in Pompano Beach, Florida, has filed a patent infringement action. *See Plaintiff's Complaint for Patent Infringement and Jury Demand, Exhibit L (the "Complaint")*. The Complaint alleges infringement of U.S. Patent No. 5,507,485 ("the '485 Patent") in the Southern District of Florida against Defendant "IntelliGolf" and other parties.

IntelliGolf is an S Corporation formed according to the laws of the State of Delaware in May 2007. IntelliGolf's sole place of business is located in Cameron Park, California. IntelliGolf's sole license to do business is in the State of California. IntelliGolf does not have a place of business in Florida, does not have any employees in Florida, does not make sales solicitations or demonstrations in Florida, does not have any resellers, distributors, or agents in Florida, does not have a telephone number or address in Florida, is not licensed in the State of Florida, and does not receive telephone messages or mail in Florida. See *Exhibit D., Schmidt Decl. p. 1-2, ¶¶ 2, 3, 4, 5 and 6.*

In its Complaint, Plaintiff states that "The technology protected by the '485 patent, enables users to, among other things, view various hole on a golf course through the use of a portable device." See *Exhibit L, Complaint p 5 ¶ 21*. Plaintiff alleges that "Defendant as infringed and continues to infringe one or more of the claims of the '485 patent by making, using, providing, offering to sell, and selling (directly or through intermediaries), in this district [SDFL] and elsewhere in the United States, GPS enabled golf products and/or solutions." See *Complaint p 7 ¶ 26*. Despite these allegations, IntelliGolf has not made, used, provided, offered to sell, and is not selling the IntelliGolf software applications directly or through any

intermediaries located in the State of Florida, and has not made, used, provided, offered to sell, and is not selling any <u>portable device(s)</u>, directly or through any intermediaries located in the State of Florida.   See *Exhibit D., Schmidt Decl. p. 2-3, ¶¶  5, 7, 10, and 11.*

The only possibly connection between IntelliGolf and the State of Florida is that IntelliGolf's website (<u>www.intelligolf.com</u>) is accessible to residents of all States, including Florida, like any web site on the Internet.  See *Exhibit G, IntelliGolf website, p 1-2.*  The IntelliGolf website only provides passive marketing for the IntelliGolf software applications.  The IntelliGolf software cannot [emphasis added] be purchased directly by customers from IntelliGolf or from the IntelliGolf web site.  The IntelliGolf web site only provides links to various resellers and distributors where the IntelliGolf software can be purchased.  There are no IntelliGolf resellers, distributors, or agents located in the State of Florida.  As such, there are no links to any IntelliGolf resellers, distributors, or agents in the State of Florida.  See *Exhibit D., Schmidt Decl. p. 2-3, ¶ 5, 10, and 11.*

From the IntelliGolf web site, anyone can enter, upload, and download golf course scorecards using the (free) IntelliGolf desktop "trial edition" software.  This can be done from anywhere that an Internet connection exists.  See *Exhibit D, Schmidt Decl, p 5, ¶ 12*  Prior to using the trial edition software, the user must agree to IntelliGolf's End-User Software License ("EULA") agreement.  See *Exhibit O, IntelliGolf End User License Agreement (Governing Law), p 2-3.*  In addition, prior to accessing, uploading, or downloading a golf course scorecard from the IntelliGolf course database, the user must create an IntelliGolf course access account that is governed by the laws of the State of California.  See *Exhibit N, IntelliGolf Create Account web page (bottom clause).*

As such, golf course access, uploads, and downloads can be done without the user being a (paying) IntelliGolf customer, without residing in Florida, and without using a portable device.

In addition, all course accesses, uploads, or download are governed by the laws of the State of California.

These facts demonstrate that Florida's long-arm statute does not confer jurisdiction over IntelliGolf.  In addition, IntelliGolf lacks the requisite minimum contacts with the State of Florida to satisfy the Due Process requirements of the United States Constitution. As such, the Defendant respectfully submits that this Court lacks personal jurisdiction over IntelliGolf. Additionally, because this Court lacks personal jurisdiction over IntelliGolf, venue in the Southern District of Florida is improper[1] and thus warrants dismissal of this case against IntelliGolf.

### III. JURISDICTION ARGUMENTS

**A.    General Standard for Determining Personal Jurisdiction.**

As has been held, "to decide whether in *personam* jurisdiction lies over a foreign defendant, courts must determine compliance with both Florida's long arm statute and the constitutional due process test of minimum contacts." *Prentice v. Prentice Color, Inc*., 779 F. Supp. 578, 581 (M.D. Fla. 1991).

With regard to Florida's long-arm statute, it has also been held that it "must be strictly construed, and the burden of proving facts which justify use of the statute is on the plaintiff." *Structural Panels, Inc. v. Texas Aluminum Indus., Inc*., 814 F. Supp. 1058, 1064 (M.D. Fla. 1993).

The second burden to be satisfied by a plaintiff in asserting jurisdiction is whether federal due process requirements have been met. As this is a patent infringement case, the law of the Federal Circuit is applied when determining whether the assertion of personal jurisdiction

---

[1] Pursuant to Federal Rule of Civil Procedure 12(g), this Motion addresses only those defenses provided by Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). IntelliGolf reserves the right to assert other, substantive defenses, including but not limited to non-infringement, patent invalidity, file wrapper estoppel, and any and all other defenses permitted by Title 35 of the United States Code.

complies with federal due process. *3D Systems, Inc. v. Aarotech Laboratories, Inc.,* 160 F.3d

1373, 1377 (Fed. Cir. 1998); See also *Akro Corp. v. Luker*, 45 F3d 1541, 1543 (Fed. Cir. l995)[2].

**B.      Florida Long Arm Statute.**

As noted above, the first burden placed on a plaintiff asserting personal jurisdiction over

an out-of-state defendant is to show that the defendant's activities fall within Florida's long-arm

statute, Fla. Stat. § 48.193. That statute provides, in pertinent part:

(1)      any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of the following acts:

(a)      Operating, conducting, engaging in, or carrying on a business or business venture in state or having an office or agency in this state.

(b)      Committing a tortious act within this state.

(f)      Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, i1 at or about the time of the injury, either:

1.      The defendant was engaged in solicitation or service activities within the state; or
2.      Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade or use.

(2)      A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.l93[3].  As is discussed more fully below, IntelliGolf's actions do not fall within the

parameters of Florida's long-arm statute, and jurisdiction over IntelliGolf is therefore improper.

**1.      Fla. Stat. § 40.193(1)(a) — Conducting Business in Florida.**

The first potentially applicable section of Florida's long-arm statute is subsection (1)(a),

which deals with conducting or carrying on a business in Florida. As the *Schmidt Declaration*

---

[2] In any event, it is inconsequential whether the Court chooses to apply Federal Circuit law or that of the Eleventh Circuit. Both Circuits apply essentially the same three-part test for determining if federal due process requirements have been met. See Section I11.C, *infra*.

[3] The provisions cited above are the only provisions relevant to the question of whether IntelliGolf is subject to jurisdiction under Florida's long-arm statute. Because of this, IntelliGolf has not reproduced the entire text of the statute here.

demonstrates, IntelliGolf does not have an office or place of business in Florida, does not make solicitations or demonstrations in Florida, does not have a telephone number or address in Florida, and does not receive mail in Florida.  The IntelliGolf website does not allow the IntelliGolf software applications to be purchased directly from its website.  Defendant's website simply provides passive marketing information on its software applications.  Defendant never had, and does not have, any resellers, distributors, or agents located in the State of Florida. See *Exhibit D., Schmidt Decl. p. 2-3, ¶¶ 5, 10  and 11.*

IntelliGolf's activities simply do not confer jurisdiction on this Court pursuant to subsection (l)(a) of Florida's long-arm statute. In order to show that a defendant is subject to jurisdiction under that subsection, "the activities of the [defendant] sought to be served. . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.' *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F3d 623, 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Associates, Inc*., 314 So. 2d 561, 564 (Fla. 1975)). There is no evidence, and indeed not even an allegation, that IntelliGolf has engaged in a general course of business activity in Florida for its own pecuniary benefit. As such, jurisdiction is not proper under § 48.193(1)(a).

### 2. Fla. Stat. § 48.193(1)(b) — Committing A Tortious Act in Florida.

The second potentially applicable section of Florida's long-arm statute is subsection (1)(b), which provides for jurisdiction when the defendant has committed a tortious act in the State of Florida. Although patent infringement has been held to be a "tortious act" within the meaning of subsection (1)(b) of Florida's long-arm statute, see *Benedict v. General Motors Corp*., 142 F. Supp. 2d 1330, 1335 (N.D. Fla. 2001), Plaintiff's allegations in this regard fall short of establishing that a tortious act has actually occurred.

This same issue has been addressed and decided by the United States District Court for the District of Connecticut. In *E-data Corp. v. Microparent Corp*., 989 F. Supp. 173 (D. Conn.

1997), a resident plaintiff sought to subject an out-of-state defendant to personal jurisdiction in Connecticut based on a portion of the Connecticut long-arm statute providing for jurisdiction over a cause of action arising out of tortious conduct in Connecticut. *Id*. at 177. This portion of the Connecticut long-arm statute is identical to Fla. Stat. § 48.193(1)(b). In finding that the defendant's conduct did not fall within this provision of the Connecticut long-arm statute, the Court noted that the plaintiff had "made no showing of tortious conduct by [the defendant] in Connecticut." *Id*. The Court went on to explain its holding, stating:

> Plaintiff has made no factual demonstration that any Connecticut Internet user actively employed [the defendant's] Web address to access the Muse site, browse the photographs of the site and then purchase a photograph utilizing the allegedly infringing technology by downloading the photograph from the Muse web site. Even accepting plaintiff's argument that [the defendant's] mere "offer to sell" photography images on the Internet — utilizing a patented system for reproducing information embodied in material objects at a point of sale location such as its Web site — to potential Connecticut consumers constitutes a tortious act in Connecticut, plaintiff makes no factual demonstration that [the defendant's] Internet "offers to sell" actually were made in Connecticut[.]

Potential IntelliGolf customers cannot purchase the IntelliGolf software directly from IntelliGolf, via the IntelliGolf web site, or from any resellers, distributors, or agents located in the State of Florida.  See *Exhibit D, Schmidt Decl., p. 3-4, ¶ 10 and 11*.  As such, no tortuous act could have been committed in the State of Florida by IntelliGolf regarding an "offer to sell" as described in *E-data Corp.*

Should this Court hold that patent infringement is a tortious act in the State of Florida, patent infringement must be determined in view of the claims of the '485 Patent.  Plaintiff alleges that "The technology protected by the '485 patent enables users to, among other things, view various holes on a golf course through the use of a <u>portable device</u>."  *See Exhibit L., Complaint, p. 5, ¶ 21.*

Each of the Plaintiff's patent claims contain limitations to <u>hardware</u> components and <u>hardware</u> devices.  For example, independent claims 1, 18, 19, 25, 28, 38 and 55 are all directed to a <u>portable golf computer</u>; claim 36 is directed to a <u>golf replay apparatus</u> comprising a <u>portable golf computer</u>; and claim 49 is directed to a <u>mobile computer</u>.  Claim 53, the only

other independent claim, is directed to a method for providing a golf course visual display which includes the current location of a movable object on the golf course and assists the golf performance on the golf course, including the steps of; affixing a GPS receiver to the movable object, processing signals received by the GPS receiver, presenting the current location to a processor means…".  In contrast to the Plaintiff's claims, IntelliGolf markets software applications under the IntelliGolf, IntelliTimer, and IntelliSwim brand names.  IntelliGolf does not make, import, sell, or offer for sale any hardware device or any of the devices recited in the above claims (portable golf computer, golf replay apparatus, mobile computer, visual display, or GPS receiver).  See *Exhibit D., Schmidt Decl. p. 2, ¶ 7.*  Hence, Defendant could not have directly infringed any of Plaintiff's claims in the Southern District of Florida.  Plaintiff has provided no basis to allege infringement by Defendant in the SDFL.

"[L]iability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement by customers." *RF Del., Inc. v. Pac. Keystone Techs., Inc.,* 326 F.3d 1255, 1267 (Fed. Cir. 2003).  "Absent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement." *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed. Cir. 1986).  Without an act of direct infringement, there is no event giving rise to a claim of inducing infringement or contributing to infringement.

Regarding actively inducing infringement, the Federal Circuit states that "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.  The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *DSU Medical Corporation v. JMS Co., Ltd,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (internal quotes and citations omitted) ("DSU").  Plaintiff has not alleged that anyone employed by IntelliGolf knew

of the '485 Patent, or that anyone employed by IntelliGolf knew that the company's actions would induce direct infringement of the '485 Patent. The Federal Circuit goes on to say that "Evidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *DSU* at 1305. Plaintiff also has not alleged that Defendant IntelliGolf encouraged direct infringement. In fact, no one employed by IntelliGolf had any knowledge of the '485 Patent prior to receipt of the Complaint. No one employed by IntelliGolf has encouraged direct infringement of the '485 Patent. See *Exhibit D., Schmidt Decl. p.2-5, ¶ 7, 10, 11 and 13.* Rather, IntelliGolf marketed software applications suitable for numerous lawful and non-infringing uses. See *Exhibit I., IntelliGolf Product Features.* Hence, Defendant has not actively induced infringement of any claim of the '485 Patent within the Southern District of Florida.

A requirement of contributory infringement is that an alleged infringing device have no substantial non-infringing uses. Defendant "IntelliGolf" markets over 30 versions of the IntelliGolf software applications. See *Exhibit J., IntelliGolf Products.* The features of the IntelliGolf software are numerous and far exceed the elements claimed in the '485 Patent thus showing substantial non-infringing uses for the IntelliGolf software. See *Exhibit I., IntelliGolf Product Features.* No contributory infringement can occur unless an accused device has no substantial non-infringing use. Hence, Defendant has not contributed to infringement of any claim of the '485 Patent in the Southern District of Florida.

Accordingly, plaintiff should not be allowed to utilize subsection (1)(b) of Florida's long-arm statute to bring IntelliGolf within the jurisdiction of this Court.[4]

### 3. Fla. Stat. § 48.193(1)(f) — Causing Injury In the State of Florida.

Under subsection (1)(f) of Florida's long-arm statute, the plaintiff must show that the out-of-state defendant's activity has caused some injury to persons or property in the State of Florida. Plaintiff's complaint falls short of the requirements of this subsection, as it has only alleged that it has suffered an economic injury as a result of IntelliGolf's actions. See *Exhibit L., Complaint p 9, ¶¶ 35, 36, and 37*. Such an injury, however, does not subject an out-of-state defendant to jurisdiction under subsection (l)(f) of Florida's long-arm statute. As the Eleventh Circuit has recognized, "[t]he Florida Supreme Court has decided that a purely economic injury, is insufficient to confer jurisdiction over a defendant under § 48.193(1)(f)." *Sunbank, N.A. v. E. F. Hutton & Co.*, 926 F2d 1030, 1033 (11th Cir. 1991). See also *Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*, 814 F. Supp. 1058, 1065 (M.D. Fla. 1993) ([T]his section does not permit jurisdiction over non-residents for acts arising outside the state which cause financial injury within the state, in the absence of personal injury or property damage"). As such, jurisdiction is not proper under subsection (1)(f) of Florida's long-arm statute.

### 4. Fla. Stat. § 48.193(2) — Substantial and Not Isolated Activity in Florida.

The final provision of Florida's long-arm statute that could potentially apply to IntelliGolf is subsection (2), which provides for jurisdiction when a defendant has engaged in "substantial and not isolated activity in the State of Florida." Fla. Stat. § 48.193(2). As the *Schmidt Declaration (Exhibit D)* clearly demonstrates, IntelliGolf has engaged in essentially no activity, let alone substantial activity, in the State of Florida. Furthermore, there is no allegation in Plaintiff's Complaint that IntelliGolf has engaged in any type of "substantial" activity in the

---

[4] Even if plaintiff was able to satisfy subsection (l)(b) of Florida's long-arm statute, IntelliGolf still lacks the requisite minimum contacts with Florida for it to be constitutionally subject to jurisdiction in this State. See Section III. C, *infra*.

State of Florida. Accordingly, jurisdiction is not proper under subsection (2) of Florida's long-arm statute.

The foregoing respectfully demonstrates that this Court cannot exercise jurisdiction over IntelliGolf, as IntelliGolf's alleged activities in the State of Florida are insufficient under Florida's long-arm statute. As such, plaintiff's Complaint against IntelliGolf should be dismissed for lack of personal jurisdiction.

## C.      Federal Due Process Considerations.

Even if this Court finds that it can properly exercise jurisdiction over IntelliGolf pursuant to Florida's long-arm statute, the requirements of federal due process demonstrate that IntelliGolf is not subject to the jurisdiction of this Court.[5]

As noted above, because this is a patent infringement case, the law of the Federal Circuit regarding personal jurisdiction controls. In *Akro Corp. v. Luker*, 45 F3d 1541 (Fed. Cir. 1995), the Federal Circuit, relying on Supreme Court precedent, set forth a three-part test for determining when the exercise of jurisdiction over an out-of-state defendant is proper under the Due Process Clause. *Id.* at 1544-45. More specifically, the Court in *Akro Corp.* relied heavily upon the United States Supreme Court opinion in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462; 105 S.Ct. 2174 (1985). After analyzing the Supreme Court's opinion in *Burger King*, the Federal Circuit fashioned the following three-part test:

(1)      Whether the defendant purposefully directed its activities at residents of the forum,

(2)      Whether the claim arises out of or relates to those activities, and

(3)      Whether assertion of personal jurisdiction is reasonable and fair.

---

[5]   Jurisdiction under the Due Process Clause can come in two forms, either general or specific jurisdiction. General jurisdiction arises "[w]hen a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum[.]" *Helicopreros Nacionales de Columbia, S.A. v Hall* 466 U.S. 408, 415 n. 9, 104 S.Ct. 1968 (1984). In order for general jurisdiction to be proper, the plaintiff must show that the defendant's contacts with the forum State are "continuous and systematic." *Id* at 416. As was noted in Section 11I.B.4, *supra*, there has been no allegation of any such activity by IntelliGolf in Florida. Accordingly, the following discussion focuses on the requirements for specific jurisdiction under federal law.

*3-D Systems, Inc. v. Aerotech Laboratories, Inc.*, 160 F3d 1373, 1378 (Fed. Cir. 1998) (citing *Alcro*, 45 F3d at l545-46).[6] Accordingly, this Court must respectfully apply the test as set forth by the *Akro Corp.* court in determining whether the assertion of jurisdiction over IntelliGolf in this case comports with federal due process.

      **1.**    **Purposefully Directed Activities.**

The first prong of the test enunciated by the Federal Circuit is dispositive of the present motion. There is no allegation that IntelliGolf purposefully directed any activities at residents of the State of Florida. As noted above, and as is borne out by the Schmidt Declaration, IntelliGolf has virtually no connection with the State of Florida. IntelliGolf does not have a place of business in Florida, does not have any employees in Florida, does not make sales solicitations or demonstrations in Florida, does not have any resellers, distributors, or agents in Florida, does not have a telephone number or address in Florida, is not licensed in the State of Florida, and does not receive telephone messages or mail in Florida.  As such, Plaintiff cannot credibly maintain that IntelliGolf has, in any way, purposefully directed its activities at the residents of Florida.

The only possible connection that IntelliGolf could have to the State of Florida is that the IntelliGolf web site is accessible to residents within the State of Florida.  As has been previously noted, the IntelliGolf web site is accessible to residents of any State via the Internet. This does not establish that IntelliGolf, in any way, purposefully directed activities at the residents in the State of Florida.  Several federal courts, including the United States District Court for the Southern District of Florida, have addressed the issue of whether maintaining an Internet web site is sufficient to establish "purposeful availment" for purposes of determining whether the assertion of jurisdiction comports with federal due process requirements. A review of the case

---

[6] As noted previously, see Section III A., *supra*, this test is essentially the same as that employed by the Eleventh Circuit. See *Posner v. Essex Ins, Co., Ltd*, 178 F.3d 1209, 1220 (11th Cir. 1999)(quoting *Vermeulen Renault, USA., Inc.*, 985 F.2d 1534, 1546 (1 1th Cir. 1993)).

law on this topic demonstrates that IntelliGolf's activities conducted via its web site are insufficient to subject IntelliGolf to the jurisdiction of this Court.

**a.** ***Response Reward Systems v. Meijer Inc*., 189 F. Supp. 2d 1332 (M.D. Fla. 2002).**

In this case, the plaintiff was a Florida limited liability corporation that sued a Michigan corporation in the United States Middle District Court of Florida. In asserting that personal jurisdiction over the defendant was proper, the plaintiff claimed that the defendant's web site was available to residents of Florida to print coupons and was therefore a sufficient contact with the forum to subject the defendant to the personal jurisdictional of the Florida Federal Court. *Id* at 113.

In response, the defendant pointed to the fact that it had no direct relationship with Florida, nor did it have any documents, employees, agents, or office in Florida for purposes of the suit.  In analyzing whether personal jurisdiction was proper, the court stated:

> ...The mere fact that Defendant's website is accessible to Florida residents is not enough to give Florida a significant interest in adjudicating the matter.  If that were the case, the State of Florida would have interest in virtually every lawsuit that arose from an internet site, a fact that would go against the interests of the interstate judicial system and the fundamental substantive social policies of the state.  More over, the burden on Defendant would be substantial.  It has no offices, employees, or documents and witnesses to this State.  Thus, the Court finds that jurisdiction in Florida does not comport with the due process requirement of fair play and substantial justice.

**b.** ***J.B., Oxford Holdings, Inc. v. Net Trade, Inc*., 76 F. Supp. 2d 1363 (S.D. Ha. 1999).**

The issue facing this Court was decided by the United States District Court for the Southern District of Florida. In the above case, the plaintiff attempted to assert personal jurisdiction over the defendant based on the fact that the defendant maintained three interactive web sites that were accessible to Florida residents. J.*B. Oxford Holdings, Inc. v. Net Trade, Inc*., 76 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999). In finding that it did not have personal jurisdiction over the defendant, the Court noted that case law on this issue required:

> [M]ore than mere maintenance of a web site accessb1e in the forum state; they require contacts that illustrate purposeful availment of the privilege of conducting commercial activity in the forum — contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states. .. Otherwise, every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located.

*Id.* (internal citations and quotations omitted). The Court went on to hold that the defendant "[had] not purposefully availed itself of the privilege of doing business in Florida nor should it have reasonably anticipated being haled into court in Florida." Ostensibly, Plaintiff is attempting to assert jurisdiction over IntelliGolf on the basis of its Internet presence in Florida. However, there has been no allegation, nor any proof, that IntelliGolf's contacts with Florida illustrate any purposeful availment of the privilege of conducting commercial activity in Florida. Rather, as the Court noted in *J.B. Oxford Holdings*, these contacts simply tie IntelliGolf to all states with equal strength.

      **c.**    ***Millenium Enterprises, inc. v. Millennium Music, LP***, **33 F. Supp. 2d 907 (D. Ore. 1999).**

The plaintiff in this case was a retail music seller located in the State of Oregon. *Millenium Enterprises, Inc. v. Millenium Music*, LP, 22 F. Supp. 2d 907 (D. Ore. 1999). The defendants in the case were a South Carolina limited partnership and corporation that sold products through their retail outlets, as well as their Internet web site. *Id*. Plaintiffs sued defendants in the United States District Court for the District of Oregon. *Id*. at 909. Subsequently, the defendants moved to dismiss based on a lack of personal jurisdiction.

In arguing that personal jurisdiction over the defendants was proper, the plaintiff asserted that the defendants' Internet web site was sufficient to support such jurisdiction. *Id*. at 913. The plaintiff pointed out that the defendants' web site was interactive, and that this alone was sufficient to confer jurisdiction on the Oregon Federal Court. Id. The court, after noting that the defendants' web site allowed Internet users to purchase compact discs, join a discount club and request franchising information, held that such contacts were not sufficient to allow the court to assert jurisdiction over the defendants. The court went on to hold:

> Defendants' Internet Web site, interactive though it may be, is not "conduct and connection" with Oregon, giving Defendants' "fair warning," so that they would reasonably anticipate being "haled" into court here. Defendants have not taken action creating "a substantial connection" with Oregon, or deliberately engaged in "significant activities" within Oregon, or created "ongoing obligations" with residents of Oregon in a manner related to plaintiff's claims. ... The fact that someone who

accesses defendants' Web site can purchase a compact disc does not render defendants' actions "purposefully directed" at this forum. ... It is the conduct of the defendants, rather than the medium utilized by them, to which the parameters of specific jurisdiction apply.

The reasoning of the Millennium Enterprises court is equally applicable to IntelliGolf in this case. Although those individuals who visit IntelliGolf web site might be able to access, upload, or download electronic golf course scorecard information, IntelliGolf has taken no action to purposefully direct its activities at residents of Florida. More specifically, in viewing IntelliGolf's web site, the potential users must agree to the final clause before submitting their requests to obtain a free IntelliGolf course access account.  See *Exhibit N., IntelliGolf Create Account web page (bottom clause).*

Just as in Millennium Enterprises, nothing on IntelliGolf's web site suggests that it intends to target Florida residents, who are located over 3000 miles (*Google Maps, 8/03/2008, Cameron Park, CA to Miami, FL*) from IntelliGolf's sole place of business in Cameron Park, California.  Accordingly, just as with the defendants in *Millennium Enterprises*, IntelliGolf has not purposefully directed its actions at Florida, and personal jurisdiction is therefore not appropriate.

     **d.**    ***Edberg v Neogen Corp*., 17 F. Supp. 2d 104 (D. Coon. 1998).**

In this case, the plaintiff was a Connecticut corporation that sued a Michigan corporation in the United States District Court for the District of Connecticut. *Edberg v. Neogen Corp*., 17 F. Supp. 2d 104, 107 (D. Conn. 1998). In asserting that personal jurisdiction over the defendant was proper, the plaintiff claimed that the defendant's web site was available to residents of Connecticut and was therefore a sufficient contact with the forum to subject the defendant to the personal jurisdictional of the Connecticut Federal Court. *Id* at 113. In support of this assertion, the plaintiff claimed that the defendant's web site is "replete with hypertext links that permit users to learn about [the defendant's] products, order product information through an on-line

catalog, e-mail [the defendant's] representatives with specific comments or questions, and order products through a toll-free "800" number." *Id.*

In response, the defendant pointed to the fact that there was absolutely no evidence that the defendant "sought particularly to encourage Connecticut residents to access the web site, which is available worldwide." Id. In analyzing whether personal jurisdiction was proper, the court first stated that the appropriate inquiry is "whether the defendant intentionally reached beyond its own state to engage in business with residents of the forum state." *Id.* at 114. In holding that personal jurisdiction was not proper, the court stated:

> In this case, there is no evidence that any user in Connecticut accessed [the defendant's] Web site or purchased products based upon the Web site advertisement. There is also no evidence that this Web site advertisement was directed at Connecticut any more than any place else in the nation. . . . Internet users cannot order products directly from the Web site. Rather, it required them to call an "800" number in Michigan or [the defendant] in Michigan or Kentucky. We find this Web site to be similar to an advertisement in a national magazine or newspaper.

*Id.* (internal citation omitted). Similarly, potential IntelliGolf customers cannot order the IntelliGolf software application(s) directly from IntelliGolf's web site. As the court in Edberg noted, this makes IntelliGolf's web site similar to an advertisement in a national magazine or newspaper, and it is therefore insufficient for the assertion of personal jurisdiction over IntelliGolf in Florida.

As the foregoing cases demonstrate, the mere presence of a web site that is accessible to residents of all States is not sufficient to confer jurisdiction over a foreign defendant. IntelliGolf has not purposefully directed its activities at the residents of Florida.  As such, Plaintiff cannot satisfy the first prong of the *Akro Corp.* test, and personal jurisdiction over IntelliGolf in Florida is inappropriate.

### 2.      Relationship to the Cause of Action.

The test enunciated by the *Akro Corp*. court also directs a court to look to whether the defendant's contacts with the forum State are related to the cause of action being asserted by the plaintiff. *Akro Corp*., 45 F3d at 1547. That prong of the test, however, only comes into play if the

court finds that the defendant has purposefully directed its activities at residents of the foreign State: "In brief, the due process inquiry requires that we determine whether [the defendant] 'purposefully directed his activities at resident of [the forum State] and, <u>if so</u>, whether 'the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. at 1545 (quoting *Burger King Corp. v. Rudzwicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985))(emphasis added). Because, in this case, IntelliGolf has not purposefully directed any of its sales activities at residents of Florida, the Court need not engage in this inquiry.

### 3.      The Constitutional Reasonableness of Jurisdiction.

Even if this Court finds that IntelliGolf purposefully directed its activities at residents of Florida, and that those activities are related to Plaintiff's cause of action, asserting jurisdiction over IntelliGolf in this case would still be unconstitutional. As the United States Supreme Court held in *Burger King*, (a case specifically relied upon by the court in *Akro Corp*. on this issue), even if a defendant is found to have purposefully availed itself of the privilege of doing business in the forum State by establishing the requisite "minimum contacts" with that State, the assertion of personal jurisdiction must still comport with the traditional notions of fair plans of substantial justice. *Burger King Corp*., 471 U.S. at 476.

In making this determination, the court "may evaluate the burden put on the defendant to litigate the case in the forum state, the forum state's interest in adjudicating the dispute, the plaintiffs interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Id*. at 477 (citations and quotations omitted).

In *Response Reward Systems v. Meijer Inc*.*, 189 F. Supp. 2d 1332 (M.D. Fla. 2002)*, the plaintiff was a Florida limited liability corporation that sued a Michigan corporation in the United States Middle District Court of Florida. In asserting that personal jurisdiction over the

defendant was proper, the plaintiff claimed that the defendant's web site was available to residents of Florida to print coupons and was therefore a sufficient contact with the forum to subject the defendant to the personal jurisdictional of the Florida Federal Court. *Id* at 113.

In response, the defendant pointed to the fact that it had no direct relationship with Florida, nor did it have any documents, employees, agents, or office in Florida for purposes of the suit.  Defendant's documents that relate to this suit are contained in Defendant's offices in Michigan, where its headquarters are located.  Plaintiff, on the other hand, claims that its business records and files are located in Florida. In analyzing whether personal jurisdiction was proper, the court stated:

> Another factor is to consider the financial ability to bear the cost of a change or venue.  If the case were to remain in Florida, there would be a greater burden to Defendant than to Plaintiff because Defendant would bear the expense of sending many employees-witnesses to trial.  The expenses would not only include the cost of the trial, but also the cost of disrupting its business for the duration of the trial. On the other hand, the Plaintiff is the only witness that would be required to travel.  Response Reward will not be affected by the Plaintiff's participation in trial in Michigan.  Therefore, Plaintiff is better able to bear the cost of a transfer than Defendant is.

Applying these factors to the present case demonstrates that it would be patently unfair to require IntelliGolf to litigate this case in Florida. First and foremost, the burden placed upon IntelliGolf if it is forced to litigate this case in Florida is extraordinary. IntelliGolf's sole paid employee and all IntelliGolf documents are located outside of Florida at IntelliGolf's sole place of business in Cameron Park, California (3,148 miles away from Miami, Florida (*Google Maps, 8/03/2008*)).  Schmidt is the sole paid employee of IntelliGolf, works from home, and is the primary care-giver for his seven (7) year old daughter.  Forcing Schmidt to litigate this matter in the State of Florida would not only be expensive (i.e. far exceeding any revenues that IntelliGolf has traditionally produced or would anticipate producing), but would significantly disrupt Schmidt's ability to continue to conduct business for IntelliGolf.  See *Exhibit D., Schmidt Decl.. p. 2-3, ¶¶ 5, 6, 14, 15, and 16.*

In addition to the potential consequences to Schmidt, the original developers of the IntelliGolf software both reside in the State of Washington, just outside of Seattle.  Both Bryant

and Simpkins would be key witnesses in this case for all of the reasons listed in their Declarations.  Bryant and Simpkins work full-time jobs for other companies in the State of Washington.  Seattle, Washington is 3,355 miles from Miami, Florida (*Google Maps, 8/03/2008*). Bryant and Simpkins are the primary bread-winners for their families.  Forcing these key witnesses to travel to the State of Florida, would be expensive, exceedingly inconvenient, and place a significant burden on their families and on their employers.  See *Exhibit E., Bryant Decl. p. 1-2, ¶ 1-7, and Exhibit F., Simpkins Decl. p. 1-2 ¶ 1-7.*

IntelliGolf does not have a place of business in Florida, does not have any employees in Florida, does not make sales solicitations or demonstrations in Florida, does not have any resellers, distributors, or agents in Florida, does not have a telephone number or address in Florida, is not licensed in the State of Florida, and does not receive telephone messages or mail in Florida. As the United States District Court for the Southern District of Florida has held, "[w]ithout sufficient contacts with the forum state, it will not comport with traditional notions of fair play and substantial justice to subject [a foreign defendant] to personal jurisdiction in Florida." *J.B. Oxford Holdings, Inc.*, 76 F. Supp. 2d at 1368. Accordingly, this prong of the *Akro Corp*. test weighs against a finding of personal jurisdiction over IntelliGolf.

In sum, to exercise personal jurisdiction over IntelliGolf in this case would be completely contrary to the spirit of "fair play and substantial justice." IntelliGolf has no real connection with the State of Florida. Because of the nature of IntelliGolf's operations, it never could have anticipated being sued in a Florida court, and it would therefore be unconstitutional to allow this litigation to proceed in Florida against IntelliGolf.

**D.**     **Improper Venue.**

Because this Court respectfully lacks personal jurisdiction over IntelliGolf, venue is also improper, and IntelliGolf is therefore entitled to dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3). As this Court has held, venue in a patent infringement

action is proper "where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." *Structural Panels, Inc. v Texas Aluminum Industries, Inc.,* 814 F. Supp. 1058, 1067 (M.D. Fla. 1993). As the foregoing discussion demonstrates, this Court respectfully lacks personal jurisdiction over IntelliGolf. As such, dismissal based on improper venue is appropriate.

### IV. CONCLUSION

Based on the foregoing, IntelliGolf respectfully requests that this Court grant its present Motion to dismiss IntelliGolf for lack of personal jurisdiction and improver venue in the Southern District of Florida.

Dated: August 8, 2008                                      Respectfully submitted,

Christopher & Weisberg, P.A.

By:   /s/ Jeffrey Kamenetsky
Jeffrey H. Kamenetsky
FL Bar No.114571
jkamenetsky@cwiplaw.com
Alan M. Weisberg
FL Bar No. 479349
aweisberg@cwiplaw.com
200 East Las Olas Boulevard
Suite 2040
Fort Lauderdale, Florida 33301
(954) 828-1488

By:  /s/ Jeffrey G. Toler
Jeffrey G. Toler
Lead Attorney – *Pro Hac Vice*
Texas Bar No. 24011201
jtoler@tlgiplaw.com

Toler Law Group.
8500 Bluffstone Cove, Suite A220
Austin, Texas  78759
Telephone:        (512) 327-5515
Facsimile:        (512) 327-5575
*Counsel for Defendants'*
*IntelliGolf, Inc. and Karrier*
*Communications*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 15, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically, Notices of Electronic Filing.

*ATTORNEY FOR PLAINTIFF:*

**Alejandro Alvarez**
355 Palermo Avenue
Coral Gables, FL 33134
305-444-7675
Fax: 444-0075
Email: alex@floridatrialteam.com

*ATTORNEYS FOR DEFENDANTS:*

**Kevin Crow Kaplan**
**Morgan Lowery Swing**
**David John Zack**
Coffey Burlington
2699 S Bayshore Drive
Penthouse A
Miami, FL 33133
305-858-2900
Fax: 858-5261
Email: kkaplan@coffeyburlington.com
Email: mswing@coffeyburlington.com
Email: dzack@coffeyburlington.com

**Jill Nexon Berman**
Berman Rennert Vogel & Mandler
100 SE 2nd Street
Suite 2900
Miami, FL 33131-2130
305-577-4173
Fax: 373-6036
Email: jnberman@brvmlaw.com
*ATTORNEY TO BE NOTICED*

**Kenneth G. Parker**
Teuton Loewy & Parker

3121 Michelson Drive
Suite 250
Irvine, CA 92516
949-442-7101
Fax: 949-442-7105
Email kparker@tlpfirm.com
*PRO HAC VICE*

**John Matthew Guard**
Holland & Knight
100 N. Tampa Street
Suite 4100 PO Box 1288
Tampa, FL 33602-3644
813-227-6485
Fax: 813-229-0134
Email: john.guard@hklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul J. Cronin**
Mintz Levin Cohn Ferris Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111
617-542-6000
Email: pcronin@mintz.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Albert Apgar Zakarian**
16765 Fish Hawk Boulevard
Suite 360
Lithia, FL 33547
813-571-2546
Fax: 251-1933
Email: zakarian@tampabay.rr.com
*ATTORNEY TO BE NOTICED*

**Leora Herrmann**
**Michael Eric Tschupp**
Kluger Peretz Kaplan & Berlin
Miami Center
201 S Biscayne Boulevard
Suite 1700
Miami, FL 33131-8424
305-379-9000
Fax: 379-3428
Email: lherrmann@kpkb.com

Email: mtschupp@kpkb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan S. Weinstein**
**Thomas J. Fisher**
Oblon Spivak McClelland Maier & Neustadt
1940 Duke Street
Alexandria, VA 22314
703-413-3000
Email: jweinstein@oblon.com
Email: tfisher@oblon.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Fulton, Jr.**
**James Cyril Malloy, III**
Malloy & Malloy
2800 SW 3rd Avenue
Miami, FL 33129
305-858-8000
Fax: 305-858-0008
Email: jfulton@malloylaw.com
Email: jcmalloy@malloylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James K. Sakaguchi**
**Neal M. Cohen**
**Valerie L. Sarigumba**
Vista IP Law Group LLP
2040 Main Street
9th Floor
Irvine, CA 92614
949-724-1849
Fax: 949-625-8955
Email: jks@viplawgroup.com
Email: nmc@viplawgroup.com
Email: vls@viplawgroup.com
*PRO HAC VICE*

**Jacqueline Clementine Tadros**
500 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33069
954-351-7479
Fax: 954-351-7475
Email: jtadros@intellectualpropertynow.com

/s/ Jeffrey H. Kamenetsky