UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-21496-CIV-MORENO/TORRES

ROBLOR MARKETING GROUP, INC.,

       Plaintiff,

   vs.

GPS INDUSTRIES, INC.,
PROSHOT INVESTORS, LLC,
PROLINK HOLDING CORPORATION,
PROLINK SOLUTIONS, LLC,
INTELLIGOLF, INC.,
KARRIER COMMUNICATIONS,
L1 TECHNOLOGIES, INC.,
LINKS POINT, INC.,
SKYHAWKE TECHNOLOGIES, LLC,
UPLAY, LLC,
GOODWIN GOLF GROUP LLC,
AND
POLARIS GOLF SYSTEMS, INC.,

       Defendants.

_____/

**DEFENDANTS' MOTION TO STAY LITIGATION
PENDING REEXAMINATION OF U.S PATENT NO. 5,507,485**

      Defendants uPlay, LLC, ProLink Holding Corporation, ProLink Solutions, LLC,[1] L1 Technologies, Inc., and Goodwin Golf Group LLC, (hereafter "Defendants"), by their respective undersigned counsel, jointly move this Court to stay litigation in this matter pending resolution of United States Patent and Trademark Office ("PTO") Reexamination No. 90/009,260 ("the Reexam") of U.S. Patent No. 5,507,485 ("the '485 Patent").  Submitted herewith is a Declaration of Neal M. Cohen In Support of Defendants' Motion To Stay Litigation Pending Reexamination of United States Patent No. 5,507,485 ("Decl. NMCohen").

      Counsel for uPlay LLC contacted Plaintiff's counsel on August 29 to see if Plaintiff would join in this Motion to Stay, and Plaintiff declined.  Decl. NMCohen, ¶ 20.

_____

[1] ProLink Holding Corporation and ProLink Solutions LLC are referred to collectively herein as "the Prolink Defendants."

<u>Table of Contents</u>

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION AND SUMMARY. . . . . . . . . . . . . . . . . .1

II.  STATEMENT OF FACTS AND BACKGROUND. . . . . . . . . . . . .4

III. ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . .8

     A.   Courts have Inherent Power to Grant Stays Pending
          the Outcome of Reexamination Which are Generally
          Favored and Liberally Granted. . . . . . . . . . . . 8

     B.   The Three Factors Generally Considered In Granting
          A Stay Pending the Outcome of a PTO Reexamination
          All Favor Granting a Stay In This Action. . . . . . 10

          1.   A Stay Pending the Reexam will not Unduly
               Prejudice the Plaintiff – Plaintiff Delayed
               Suit for Years, Could be Entitled to No More
               Than Monetary Damages, and a Stay Will Benefit
               All Parties Equally. . . . . . . . . . . . . . 10

          2.   A Stay Pending Reexam will Simplify the Issues
               and Provide Other Benefits – Claims are Likely
               to be Canceled and/or Amended During Reexam, a
               Stay Will Avoid Duplicative Litigation and
               Provide PTO Expertise. . . . . . . . . . . . . 13

          3.   A Stay is Appropriate at this Stage of the
               Litigation – Discovery has not Begun, Initial
               Disclosures have not been Exchanged. . . . . . 17

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . .19

Table of Authorities

Cases

*3M Innovative Props. Co. v. DuPont Dow Elastomers LLC*,
    WL 2216317, (D. Minn. 2005) (slip op.). . . . . . . . . .10

*Bausch & Lomb Inc. v. Rexall Sundown, Inc.*,
    2008 WL 2097563 (W.D.N.Y. 2008). . . . . . . . . . . . . .9

*Baxa Corp. v. ForHealth Techs.*,
    2006 U.S. Dist. LEXIS 28583 (M.D. Fla. 2006). . . . . .9,10

*Brown v. Shimano Amer. Corp.*,
    18 U.S.P.Q.2d 1496 (C.D. Cal., 1991). . . . . . . . . . .10

*CNS, Inc. v. Silver Eagle Labs, Inc.*,
    2004 U.S. Dist. LEXIS 28960 (D. Minn. 2004). . . . . . . 10

*DataTreasury Corp. v. Wells Fargo & Co.*,
    490 F.Supp2d 749 (E.D. Tex. 2006). . . . . . . . . . . 9,15

*Direct Imaging Sys. v. U.S. Graphic Arts, Inc.*,
    2007 U.S.Dist. LEXIS 17105 (M.D. Fla. 2007). . . . . . . .9

*DonnellyCorp. v. Guardian Indus.*,
    2007 WL 3104794 (E.D. Mich. 2007). . . . . . . . . . . . .9

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006). . . . . . . . . . . . . . . . . . . 10

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988). . . . . . . . . . . . . . 8

*Gonnocci v. Three M Tool & Mach., Inc.*,
    68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003). . . . . . . . .10,19

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983). . . . . . . . . . . . . 8,9

*GPAC, Inc. v. D.W.W. Enters., Inc.*,
    144 F.R.D. 60 (D.N.J. 1992). . . . . . . . . . . . . . .10

*Hewlett-Packard Co. v. Acuson Corp.*,
    1993 U.S. Dist. LEXIS 6449 (N.D. Cal. 1993). . . . . . .10

*KSR International Co. v. Teleflex, Inc.*,
     550 U.S. _____, 127 S.Ct. 1727 (2007). . . . . . 2,5,15,16

*Magna Donnelly Corp. v. Pilkington N. Am., Inc.*,
     2007 WL 772891 (E.D. Mich. 2007). . . . . . . . . . 8,18,19

*Middleton, Inc. v. Minn. Mining and Mfg. Co.*,
     2004 WL 1968669 (S.D. Iowa 2004). . . . . . . . . 9,16,19

*Motson v. Franklin Covey Co.*,
     2005 WL 3465664 (D.N.J. 2005). . . . . . . . . . . . . 10

*Nanometrics, Inc. v. Nova Mearuing Instruments, Ltd.*,
     2007 WL 627920 (N.D. Cal. 2007). . . . . . . . . . . . 11

*Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*,
     2003 U.S. Dist. LEXIS 27445 (D. Minn. 2003). . . . . . . .8

*Ricoh Co. v. Aeroflex Inc.*,
     2006 WL 3708069 (N.D. Cal. 2006). . . . . . . . . . . .11

*Robert H. Harris Co. v. Metal Mfg. Co.*,
     1991 U.S. Dist. LEXIS 16086, (E.D. Ark., 1991). . . . . .10

*Rohm and Haas Co. v. Brotech Corp.*,
     1992 U.S. Dist. LEXIS 3252 (D. Del. 1992). . . . . . . . 10

*Softview Computer Prods. Corp. v. Hayworth, Inc.*,
     2000 WL 1134471, 56 U.S.P.Q.2d 1633. . . . . . . . . . 18

*Stryker Trauma S.A. v. Synthes (USA)*,
     2008 WL 877848 (D.N.J. 2008). . . . . . . . . . . . . .11
*Tap Pharma. Prod., Inc. v.Atrix Labs Inc.*,
     2004 WL 422697, 70 U.S.P.Q.2d 1319 (N.D. Ill. 2004). . . 18

*Teradyne, Inc. v. Hewlett-Packard Co.*,
     1993 U.S. Dist. LEXIS 14601 (N.D. Cal. 1993). . . . . . .10

*Translogic Technology, Inc., In re*,
     504 F.3d 1249 (Fed. Cir. 2007). . . . . . . . . . . 13,14

*Translogic Technology, Inc. v. Hitachi, Ltd.*,
     250 Fed. Appx. 988 (Fed. Cir. 2007). . . . . . . . .13,14

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
     766 F. Supp. 212 (D. Del. 1991). . . . . . . . . . . . 10

<u>Statutes and Regulations</u>

35 U.S.C. § 286. . . . . . . . . . . . . . . . . . . . 10,11

35 U.S.C. § 301 et. seq. . . . . . . . . . . . . . . . . 6

35 U.S.C. § 303(a) . . . . . . . . . . . . . . . . . .7,11

35 U.S.C. § 305. . . . . . . . . . . . . . . . . . . .7,12

35 U.S.C. § 312(a) . . . . . . . . . . . . . . . . . . . 7

37 C.F.R. § 1.510. . . . . . . . . . . . . . . . . . . . 6

37 C.F.R. § 1.515(a) . . . . . . . . . . . . . . . . . . 7

37 C.F.R. § 1.550. . . . . . . . . . . . . . . . . . .7,12

<u>Other Authorities</u>

Fed. R. Civ. P. Rule 26(d)(1). . . . . . . . . . . . . .6,18

Manual of Patent Examining Procedure (MPEP) § 2241. . . . . 7,11

MPEP § 2254. . . . . . . . . . . . . . . . . . . . . .7,12

MPEP § 2261. . . . . . . . . . . . . . . . . . . . . .8,12

MPEP § 2686.04(l) . . . . . . . . . . . . . . . . . . . 12

S.D.Fla. L.R. 16.1. . . . . . . . . . . . . . . . . . . 6,18

S.D.Fla. L.R. 16.1.B. . . . . . . . . . . . . . . . . . 6,18

S.D.Fla. L.R. 26.1.F.1. . . . . . . . . . . . . . . . . 6,18

<u>**MEMORANDUM OF LAW**</u>

## I. INTRODUCTION AND SUMMARY

Defendants are seeking a stay of this action pending resolution of the Reexam.  While the decision to grant a stay is within the discretion of the Court, courts have adopted a liberal policy *in favor* of granting motions to stay actions pending the outcome of reexamination proceedings, and the reexamination procedure should be deferred to by the courts, especially where the suit is in the early stages.  In deciding a motion a stay an action pending the outcome of a PTO reexamination of a patent at issue, courts generally weigh the following three factors:

(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party,

(2) whether a stay will simplify issues in question and trial of the case, and

(3) whether discovery is complete and whether a trial date has been set.

As summarized below, the Court should grant the present motion to stay pending outcome of the Reexam because, in the present case, these factors all weigh heavily in favor of a stay.  Specifically:

<u>(1) - A stay will neither unduly prejudice nor tactically disadvantage Plaintiff</u>

A stay will neither unduly prejudice nor tactically disadvantage Plaintiff.  Plaintiff has waited many years to enforce '485 Patent, despite the fact that at least some of Defendants' products have been on the market for at least 10 years.  Plaintiff does not produce a product and appears to have no operations whatsoever.  Plaintiff did not pursue any preliminary relief and it is unlikely Plaintiff would ever be entitled to injunctive relief.  Monetary damages, if ever warranted, will make Plaintiff whole and such damages will not be affected by a stay.  In fact, if

Plaintiff had timely shown any inclination to enforce its patent, a reexamination could have been completed years ago.

By contrast, Defendants *will* be prejudiced by denial of a stay and the resulting parallel proceedings.  Neither Defendants nor this Court should be required to litigate this case fully and then litigate this case again due to claims modified and/or canceled during the Reexam.  Furthermore, unlike Plaintiff's delay in filing this action, the Request for Reexam was filed with speed and all due diligence, indeed, within 3 months after service of the complaint, which was the first notice to Defendants that Plaintiff had any intent to enforce the '485 Patent.

<u>(2) - A stay will simplify issues in question and the trial of the case</u>

A stay will simplify issues in question and the trial of this action.  In view of newly discovered prior art, the liberalized standard for obviousness set forth by the Supreme Court in *KSR v. Teleflex* (hereafter "*KSR*")[2], and the misrepresentations and mistakes committed during the original examination of the '485 Patent, there is a high likelihood the reexamination will result in the cancellation or amendment of most, if not all, of the claims in the '485 Patent.

Thus, the Reexam will substantially reduce the issues before this Court and will benefit this Court's proceedings.  For example:

a.      Historically, the PTO has granted over 92% of *ex parte* Requests for Reexamination, and has eliminated, amended, or otherwise limited the claims in over 70% of reexamined patents;

b.      If some of the asserted claims of the '485 Patent are found invalid during the Reexam, the claims at issue in the suit will be reduced, and if all claims are found invalid, the suit will likely be dismissed;

---

[2] *KSR International Co. v. Teleflex, Inc.*, 550 U.S. _____, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007).

c.      Many discovery problems relating to prior art can be alleviated by the PTO examination during the Reexam, such as determinations as whether certain prior art is applicable, can be sworn behind, or is analogous prior art;

d.      The cost will likely be reduced both for the parties and the Court.  A stay will be the most efficient use of judicial resources by preventing duplication of effort, as the same issues of invalidity asserted in the Reexam will be presented to this Court.  Further, if a stay is granted, there will not be the risk that after a trial, all or part of the case would have to be re-tried based on the results of the Reexam;

e.      Prior art presented to the Court will likely already have been considered by the PTO in the Reexam, with its particular expertise;

f.      The outcome of the Reexam will likely encourage a settlement without further involvement of the Court, yet without a stay, this Court will likely be presented with the issue of invalidity prior to settlement with all the Defendants;

g.      The record of the Reexam will likely be entered at trial, thereby reducing the complexity and length of the litigation, as issues of validity over the prior art presented in the Reexam will have been considered by the PTO;

h.      Issues, defenses, and evidence will be much more limited in pretrial conferences after a Reexam.

(3).    Discovery is not complete (but a trial date has been set)

This case is truly in its infancy, as proper discovery has not even commenced,[3] several defendants have yet to appear pending extensions of time to answer, and there are still undecided motions to dismiss for lack of jurisdiction.  Although a trial date has been set for January 19,

---

[3]   Even if discovery has commenced by the time this motion is decided by the Court, it could only be very early in the discovery process, and nowhere near completed.

2009, it is practically impossible to hold that date.  Accordingly, uPlay (and other defendants) intend to file a motion to continue the case and reset the litigation calendar.

*****

In sum, the facts and circumstances strongly favor a stay, and there are no compelling reasons to deny a stay.  Therefore, the Court should grant this Motion and stay this action pending the outcome of the Reexam.

## II.  STATEMENT OF FACTS AND BACKGROUND

The '485 Patent has 54 claims directed to a portable golf computer having various features such as display means, memory means, position sensing means, and processor means. Each of the claims further includes additional limitations argued by the patentee as distinguishing over the prior art, as explained in more detail below.

The '485 Patent issued from U.S. Patent Application No. 08/234,420, filed by Donald Fisher ("Fisher"), on April 28, 1994 ("the '420 application").  The original claims filed in the '420 application did not recite "plurality of the golf course scenes" or "automatically determining location".  In addition, many of the claims which issued with the "locating means," "position sensing means," and "satellite signal" limitations, were amended to include such limitations in order to overcome anticipation and obviousness rejections asserted by the Examiner during the original examination by the PTO.

Significantly, during the original examination of the '420 application, the Examiner had no art before him disclosing a golf rangefinder having a GPS receiver for determining location and which stores and displays a plurality of scenes of a golf course.  In addition, and inexplicably, the Examiner never combined the teachings of two of the most relevant references before him, U.S. Patent No. 5,364,093 ("Huston et al.") and U.S. Patent No. 5,245,537

("Barber").  See Decl. NMCohen, ¶ 14 (Exhibit 5).  Huston discloses a golf rangefinder which uses GPS for determining location, but does not expressly disclose displaying one of a plurality of images of a hole on a golf course.  Barber discloses a golf rangefinder which uses an accelerometer for determining location, and plainly discloses storage of a plurality of scenes of a golf course and display of a scene based on the determined location of the rangefinder.  Under the liberalized standards set forth in *KSR*, it would surely be obvious to combine the teachings of these two references to render obvious numerous of the claims of the '485 Patent (including at least claims 1, 18 and 19, and many of their dependent claims).

The '485 Patent issued on April 16, 1996.  From that date, until the filing and service of this lawsuit more than 12 years later, it appears Plaintiff did absolutely nothing to enforce or police its patent.  Plaintiff never commercialized a golf rangefinder.  (Decl. NMCohen, ¶¶ 1, 16). Prior to the lawsuit, Defendants received no cease and desist letters, or any other indication that Plaintiff had any intention to enforce the '485 Patent.  (Decl. NMCohen, ¶ 2).

Meanwhile, numerous portable golf GPS devices were developed, and commercialized. For example, for more than 10 years the ProLink defendants have been selling golf course management systems employing cart-based GPS technology and cart-based visual displays. (Decl. NMCohen, ¶ 3).  Defendant L1 Technologies has been selling its iGolfGPS handheld GPS software for at least 4 years, and its iGolf GPS Caddie for at least two years, in a form materially the same as its current products accused in this lawsuit.  (Decl. NMCohen, ¶ 4).

On May 27, 2008, the Plaintiff filed the present lawsuit, without any prior notice to the Defendants.  (Decl. NMCohen, ¶ 2).  Defendant uPlay, LLC obtained an extension of time to answer the complaint and answered the complaint on July 23, 2008.  (Decl. NMCohen, ¶ 5). Several other defendants answered between July 24, 2008 and August 4, 2008.  (Decl.

NMCohen, ¶ 6).  Defendant GPS Industries, Inc. has obtained several extensions of time to answer, and just filed its answer today.  (Decl. NMCohen, ¶ 7).  Defendant Intelligolf, Inc. has filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and Defendant Karrier Communications has filed a Motion to Dismiss for Improper Venue.  (Decl. NMCohen, ¶ 8).  Plaintiff has not yet opposed Intelligolf's motion, and the Court has not ruled on either Intelligolf's or Karrier's Motions.  (Decl. NMCohen, ¶ 9).

Although a Scheduling Order was issued *sua sponte* by the Court on August 25, 2008, discovery in this case has not yet commenced.  Plaintiff apparently attempted to serve several discovery requests on or about September 2, 2008, but such requests are improper as discovery cannot commence in this case until after the Initial Disclosures are served by the parties, pursuant to Fed. R. Civ. P. Rule 26(d)(1)[4] and L.R. 26.1.F.1.[5]  At the time of this Motion, none of the parties to this case has made its Rule 26 Initial Disclosures.  (Decl. NMCohen, ¶ 10).  Furthermore, the Pretrial Order Setting Conference indicates S. D. Fla. L.R. 16.1 applies to the party conference, and L.R. 16.1.B states the conference is "for the purposes prescribed by Fed.R.Civ.P. 26(f)."  In any event, even if discovery is open by the time this motion is decided by the Court, discovery is still in the very early stages.

On August 21, 2008, based on the newly-discovered prior art, and the mistakes and misrepresentations during the original prosecution, Defendant uPlay, LLC filed a Request for *Ex Parte* Reexamination with the PTO, under 35 U.S.C. § 301 et. seq. and 37 C.F.R. § 1.510.[6]  A true and correct copy of the Request for Reexam is attached as Exhibit 2 to the Decl. NMCohen

---

[4] A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.  This Court has not issued any order opening discovery.

[5] "...a party may not seek discovery from any source before the parties have conferred as required by Fed.R.Civ.P. 26(f)."

[6] L1 Technologies, Inc. was not a party to the reexam, and had no knowledge that uPlay was filing a reexam.

(See Decl. NMCohen, ¶ 12).  The Request for Reexam cites 9 pieces of prior art that raise substantial new questions of patentability – including 4 references that were not cited during the original prosecution of the '485 Patent.  The Request for Reexam demonstrates that all of the claims of the '485 Patent are invalid as being anticipated and/or obvious over the prior art cited in the Request for Reexam.  (See Decl. NMCohen, Exhibit 2, Request for Reexam).  For example, the Request for Reexam shows that at least two of the key elements relied upon by Fisher to distinguish the prior art of record, in particular the use of GPS in combination with displaying particular scenes of a golf course based upon the GPS determined location, are taught by a reference that was not of record in the original prosecution of the '485 Patent.  Several other references that were not of record teach elements of claims that were not shown in the prior art of record.  In addition, as discussed in the Request for Reexam, the patentee made misrepresentations about the prior art of record, and the Examiner overlooked key teachings in the prior art of record.  All of the deficiencies of the original examination raise serious questions concerning the patentability of <u>all</u> of the claims of the '485 Patent, and establish substantial new questions of patentability warranting grant of the Request for Reexam by the PTO.

The PTO is required to render a decision on the Request for Reexam within <u>3 months</u> from the date of the request.  35 U.S.C. § 303(a); 37 C.F.R. 1.515(a); Manual of Patent Examining Procedure (MPEP) § 2241.[7]  According the PTO, as of June 30, 2008, **<u>92%</u>** of all requests for *ex parte* reexamination have been granted.  (Decl. NMCohen, ¶ 11, Exhibit 1).  A determination by the PTO denying a request for reexamination is "final and non-appealable."  35 U.S.C. § 312(a).[8]

---

[7] The PTO has already issued a Notice of Request for Reexam regarding the '485 Patent, and has assigned a filing date of August 21, 2008.  See Decl. NMCohen, ¶ 19, Exhibit 6.

[8] In the unlikely event the Request for Reexam of the '485 Patent is denied, the parties will promptly notify the Court.

Once a request for reexam is granted, the PTO will then undertake to reexamine the patent's validity with "special dispatch," i.e., ahead of other applications.  35 U.S.C. § 305; 37 C.F.R. § 1.550; MPEP § 2254.  A first Office Action on the merits of the patentability of the patent undergoing reexam must be issued by the PTO Examiner within <u>1 month</u> after a reply is filed by the patentee.  MPEP § 2261.

## III.  ARGUMENT AND AUTHORITY

### A.      Courts have Inherent Power to Grant Stays Pending the Outcome of Reexamination Which are Generally Favored and Liberally Granted

It is well-established that "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination," and that the decision whether to stay rests "with the sound discretion of the Court."  *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted); *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.,* 2003 U.S. Dist. LEXIS 27445, *7-8 (D. Minn. Nov. 17, 2003).  However, Congress' clear intent in establishing the reexamination procedure was that the procedure would be deferred to by the courts as "an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise" and "provide the federal courts with the expertise of the PTO in resolving patent claims."  *Ethicon,* 849 F.2d at 1426; *Magna Donnelly Corp. v. Pilkington N. Am., Inc.,* 2007 WL 772891, at *2 (E.D. Mich. March 2, 2007).  As the Federal Circuit expressed in approving a district court's grant of a stay pending conclusion of a reexamination:

> One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity/invalidity] (when the claims is canceled) or to facilitate trial of the issue by providing the district court with the expert view of the PTO (when a claims survives the reexamination proceeding).

*Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).  Although early versions of the reexamination statute expressly provided for a stay pending reexamination, the Federal Circuit recognized that Congress did not expressly provide for a stay, only because:

> It [was] believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure.  It [was] anticipated that these measures provide for a useful and necessary *alternative* for challengers and for patent owners to test the validity of United States Patents in an efficient and relatively inexpensive manner.  (Original emphasis) (Citations Omitted).

*Gould*, 705 F.2d at 1342.  The Federal Circuit stated stays are necessary "if the purpose of the reexamination statute is to be preserved."  *Id.*

In keeping with Congress' intent, the above-stated purposes, and the Federal Circuit's express guidance and approval of same, the district courts have recognized a "liberal policy in favor of granting stays" (*DonnellyCorp. v. Guardian Indus.,* 2007 WL 3104794 at *3 (E.D. Mich. October 22, 2007), and that reexamination by the PTO "should be deferred to by the courts…especially where the infringement litigation is in the early stages."  *Bausch & Lomb Inc. v. Rexall Sundown, Inc.,* 2008 WL 2097563 at *2 (W.D.N.Y. May 19, 2008).  Accordingly, the district courts "have routinely stayed infringement actions pending the outcome of reexamination proceedings."  *Middleton, Inc. v. Minn. Mining and Mfg. Co.,* 2004 WL 1968669 at *3 (S.D. Iowa Aug. 24, 2004).

In determining whether to issue a stay of litigation pending the outcome of a PTO reexamination of the patent in suit, courts generally weigh the following three factors:

(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party,

(2) whether a stay will simplify issues in question and trial of the case, and

(3) whether discovery is complete and whether a trial date has been set.

*DataTreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp2d 749, 754 (E.D. Tex. 2006); *Direct Imaging Sys. v. U.S. Graphic Arts, Inc.*, 2007 U.S.Dist. LEXIS 17105 (M.D. Fla. 2007); *Baxa Corp. v. ForHealth Techs.*, 2006 U.S. Dist. LEXIS 28583 (M.D. Fla. 2006). The district courts have acknowledged the many benefits of granting stays pending a PTO reexam of the patent in suit, and there is long line of district court precedent of doing so.[9]

In the present case, all three above factors weigh decisively in favor of granting a stay of this litigation until the conclusion of the Reexam.

**B.      The Three Factors Generally Considered In Granting A Stay Pending the Outcome of a PTO Reexamination All Favor Granting a Stay In This Action.**

**1.      A Stay Pending the Reexam will not Unduly Prejudice the Plaintiff – Plaintiff Delayed Suit for Years, Could be Entitled to No More Than Monetary Damages, and a Stay Will Benefit All Parties Equally.**

Plaintiff faces no prejudice from a stay. First, any potential monetary damages could be Plaintiff's sole remedy in this case given that Plaintiff does not produce a product, has no substantial operations, and appears to exist only as a holding company whose only asset is the '485 Patent. *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006); See Decl. NMCohen, ¶¶ 1, 16). Plaintiff did not seek a preliminary injunction, and under the standards set forth by the Supreme Court in *eBay,* it is unlikely Plaintiff could ever obtain injunctive relief in this action. *eBay Inc.* 547 U.S. at 391 (Kennedy, concurring) (stating that granting an injunction to a non-practicing entity is against the public interest). Moreover, should the PTO uphold the validity of

---

[9]  *See, e.g., Baxa Corp. v. ForHealth Techs.*, 2006 U.S. Dist. LEXIS 28583 (M.D. Fla. 2006); *Motson v. Franklin Covey Co.*, No. Civ. 03-1067 (RBK), 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005); *3M Innovative Props. Co. v. DuPont Dow Elastomers LLC*, No. 03-3364-MJD/AJB, 2005 WL 2216317, at *3 (D. Minn. Sept. 8, 2005) (slip op.); *CNS, Inc. v. Silver Eagle Labs, Inc.*, No. 04-968, 2004 U.S. Dist. LEXIS 28960 (D. Minn. Nov. 29, 2004); *Gonnocci v. Three M Tool & Mach., Inc.*, 2003 WL 22870902, 68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003); *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808, 1993 U.S. Dist. LEXIS 6449 (N.D. Cal. May 5, 1993); *Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344, 1993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993); *Rohm and Haas Co. v. Brotech Corp.*, 1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60 (D.N.J. 1992); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991); *Brown v. Shimano Amer. Corp.*, 18 U.S.P.Q.2d 1496 (C.D. Cal., 1991); *Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at *9-*10 (E.D. Ark., June 20, 1991).

the asserted claims unchanged from their present form (which is highly unlikely as discussed below), Plaintiff would be entitled to seek monetary damages, including prejudgment interest, for the entire past period of infringement not excluded by the six year statutory bar.  35 U.S.C. § 286.  Given Plaintiff has no business to protect and could not seek lost profits, a reasonable royalty could be its only potential remedy.  Thus, a stay would not significantly prejudice Plaintiff's available remedies.  *See, e.g., Ricoh Co. v. Aeroflex Inc.* 2006 WL 3708069 at *5-6, (N.D. Cal. Dec. 14, 2006) ("Moreover, Ricoh has indicated that it is not seeking lost profits, but instead is seeking reasonable royalty damages.  As a result, the Court finds that a stay would not significantly prejudice Ricoh's potential remedies."); *Nanometrics, Inc. v. Nova Mearuing Instruments, Ltd.*, 2007 WL 627920 at *3 (N.D. Cal. Feb. 26, 2007) ("Assuming the PTO does not cancel or substantively change the ['485 Patent], [patentee's] potential recovery of damages will not be affected by the re-examination proceeding. [Patentee] will be able to recover for any infringement that occurs prior to" the patent's expiration) (citations omitted).

Second, a stay will not result in an undue or indefinite protraction of this litigation.  That a stay will delay the progress of litigation "is not a dispositive issue as it is common to all stayed cases."  *Stryker Trauma S.A. v. Synthes (USA),* 2008 WL 877848 at *2 (D.N.J. Mar. 28, 2008).  Rather than being a reason for denying a stay, the resulting "delay in proceedings serves the interests of correctness and finality, by assuring that any decision by the PTO can be taken into account by [the] court prior to further proceedings" even though it "necessarily results in deferral of the final outcome of this case."  *Id.*  The parties, and this Court, will know within 3 months (from the August 21, 2008 filing date of the Request for Reexam) whether the PTO will grant the Request for Reexam and reexamine the validity of the '485 Patent.  *See* 35 U.S.C. § 303(a) (the PTO must issue a decision on a request for reexam "[n]ot later than 3 months" after filing).  In

11

fact, patent examiners are supposed to review ex parte reexamination requests within 6 weeks of the filing date, and the decision whether to accept or reject the request is supposed to be mailed within ten weeks of the filing date.  MPEP § 2241.  Thereafter, the Reexam must be conducted with "special dispatch", i.e., ahead of other applications.  35 U.S.C. § 305; 37 C.F.R. § 1.550; MPEP § 2254.  Moreover, as the '485 patent is in litigation, the PTO will give it "priority over all other cases", and if the present action is stayed pending the Reexam, the PTO will further expedite the procedure.  *See* MPEP §2261 and MPEP § 2686.04(l) ("Action on [a reexamination of a patent in litigation] will be given precedence to any other action taken by the examiner in the Office;" and where "litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible.  Cases will be taken up for action at the earliest time possible, and time periods set in actions may be extended only upon a strong showing of sufficient cause").  For all *ex parte* reexaminations, the median pendency from filing to certificate issue is only 18.9 months.  (Decl. NMCohen, ¶ 11, Exhibit 1).  Taking into account the acceleration due to pending litigation and assuming a stay is granted, the pendency of the present Reexam should be significantly shorter than the median.

Third, the Reexam and stay are not being pursued for dilatory purposes or to gain an unfair tactical advantage.  Here, the Request for Reexam is based in large part on recently discovered prior art, and defendant uPlay, LLC proceeded quickly to prepare and file the Request for Reexam and to disclose the new prior art and the Request for Reexam to the Plaintiff.  (Decl. NMCohen, ¶ 17, and also Exhibit 2).  Indeed, the Request for Reexam was filed within 3 months after the complaint in this case was filed, and this motion to stay was filed within 15 days after filing the Request for Reexam.  (Decl. NMCohen, ¶ 18).  Service of the complaint in this action was the first notice to Defendants that Plaintiff had any intent to enforce the '485 Patent.  (Decl.

NMCohen, ¶ 2).  In addition, Defendant uPlay LLC proceeded diligently to disclose the new prior art and the Request for Reexam.  There is absolutely no evidence of dilatory motives or unfair tactical advantage.

By contrast, the Plaintiff can hardly claim prejudice due to delay, when it has waited many years to bring this lawsuit, even though products substantially similar to the accused products have been on the market for years.  For example, for more than 10 years the ProLink defendants have been selling golf course management systems employing cart-based GPS technology and cart-based visual displays.  (Decl. NMCohen, ¶ 3).  In addition, Defendant L1 Technologies has been selling its iGolfGPS handheld GPS software for at least 4 years, and its iGolf GPS Caddie for at least two years, in a form materially the same as its current products accused in this lawsuit.  (Decl. NMCohen, ¶ 4).

Based on the arguments above, this factor, weighs heavily in favor of the Court granting a stay pending the outcome of the Reexam.

> **2.     A Stay Pending Reexam will Simplify the Issues and Provide Other Benefits – Claims are Likely to be Canceled and/or Amended During Reexam, a Stay Will Avoid Duplicative Litigation and Provide PTO Expertise**

A stay would avoid the inefficiency of parallel proceedings and the risk that the result of a trial would be reversed by a conflicting outcome in the reexamination.  The Federal Circuit cases of *In re Translogic Technology, Inc.,* 504 F.3d 1249 (Fed. Cir. 2007), and *Translogic Technology, Inc. v. Hitachi, Ltd.,* 250 Fed. Appx. 988 (Fed. Cir. 2007), illustrate the inefficiencies that can result without a stay.   In *In re Translogic*, the PTO granted a reexamination request while a patent infringement action was pending in district court.  *Translogic*, 504 F.3d at 1251.   The district court proceeded to trial in parallel with the reexamination proceedings.  *Id*.  After a jury upheld the patent as valid, the district court granted summary judgment of infringement.  *Id*.  The district court empanelled yet another jury to

consider damages.  *Id.*  In the parallel reexamination proceeding, however, the PTO's Board of Patent Appeals and Interferences ("the Board") upheld the patent examiner's ***rejection*** of the patent in suit.  *Id.*  The Federal Circuit affirmed the Board's decision invalidating the patent, and vacated and remanded the district court's judgment, ordering a dismissal.  *Id.*; *Translogic*, 250 Fed. Appx. at 988.  Accordingly, the time and resources of the court, the parties and two separate juries were wasted by the parallel proceedings.  Thus, the *Translogic* scenario illustrates the waste and inefficiency that can result from denying a stay while PTO reexamination proceedings proceed in parallel with litigation.  If the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims.  ***Thus, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.***  Without a stay, this case could go the unfortunate way of *Translogic*.  But regardless, parallel proceedings are inherently wasteful.  A stay would avoid such waste, and cause no prejudice.

Turning to the specifics of the present case, given the high level of relevance of the new prior art references cited, the misrepresentations by the patentee during the original examination, and the clear errors by the Examiner in construing the prior art, it is highly likely that both: (1) the request for Reexam will be granted by the PTO; and (2) the claims of the '485 Patent will have to be canceled and/or amended during the Reexam.  Accordingly, a stay in this case will simplify the issues, avoid duplicative litigation and allow the Court to benefit from the technical expertise of the PTO.  The benefits in litigation of having the PTO's decision after the Reexam are concrete, numerous, and well-recognized, as many federal courts have expressed in the context of *ex parte* reexamination proceedings, including: (1) furthering judicial economy; (2)

determining validity; (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties. *See, e.g. DataTreasury Corp.,* 490 F.Supp.2d at 754 (E.D. Tex. 2006). Many other districts courts have likewise acknowledged these benefits.

It is a virtual certainty the PTO will grant the Request for Reexam, and many if not all, of the aforementioned benefits will materialize in the instant case. For one, the PTO has granted 92% of *ex parte* Requests for Reexamination. (Decl. NMCohen, ¶ 11, Exhibit 1). More significantly, one of the most pertinent, if not the most pertinent, prior art references submitted in the Request for Reexam was not of record during the original examination of the '485 Patent by the PTO, namely U.S. Patent No. 5,438,518 ("Bianco")(See Decl. NMCohen, ¶14, Exhibit 4 ('485 Patent which does not list Bianco).) Bianco discloses the very elements that Fisher relied on most to distinguish over the prior art cited by the Examiner during the original examination of the '485 Patent. Bianco explicitly discloses a golf rangefinder which (1) utilizes a global positioning satellite ("GPS") receiver, and (2) stores and displays a plurality of scenes of a golf course based upon the GPS determined location of the device. As discussed in the Request for Reexam, these were two of the elements of the claims that Fisher relied on most to argue over the rejections during the original examination. (See Decl. NMCohen, ¶ 12, Exhibit 2).

Moreover, the teachings of certain references considered during the original examination were either misrepresented by Fisher or were inexplicably overlooked and/or misconstrued by the Examiner. More specifically, the key teachings of Huston and Barber were misrepresented, overlooked and misconstrued. Under the correct obviousness test as enunciated in *KSR*, it would be eminently obvious to replace the non-GPS based locating device taught in Barber with the GPS device as disclosed in Huston, to invalidate many of the claims as issued in the '485 Patent.

(See Decl. NMCohen, ¶ 12, Exhibit 2).  This omission may have been due to the Examiner's incorrect strict application of the teaching, suggestion, or motivation to combine ("TSM") obviousness test, which was recently clarified by the Supreme Court in *KSR*.[10]  Nevertheless, there are now clearly substantial new questions of patentability, and the Request for Reexam will inevitably be granted.  In the unlikely event the PTO denies the request, the litigation can immediately proceed, with less than a 3 month pause.

Moreover, once the Request for Reexam is granted, it is very likely that the claims of the '485 Patent will either be canceled or substantially amended.  Recent PTO statistics show that patents subject to *ex parte* reexamination result in claims being **canceled or amended in 75% of cases**.  (Decl. NMCohen, ¶ 11, Exhibit 1).  In other words, in only 25% of cases are all of the claims confirmed in an *ex parte* reexamination.  In addition, in 11% of cases all claims are canceled.  (Decl. NMCohen, ¶ 11, Exhibit 1).  In view of the high degree of relevance of the new prior art and the clear-cut case of invalidity of the claims, there is a reasonable likelihood all of the claims will be canceled, and a high likelihood at least some of the claims of the '485 Patent will be canceled or amended.  If all of the claims are canceled, it will put an end to this litigation without additional work and expenditure by the parties or the Court.  Even if only some of the claims are canceled, the present action will be simplified, as there will be no need to litigate those claims.  And even if claims are only amended (but not canceled) during the Reexam, if the stay is not granted there is a strong likelihood significant resources will be expended on discovery, claim construction, summary judgment motions, and potentially trial which would have to be re-done in view of the outcome of the Reexam.  *See, e.g. Middleton v. Minn. Mining*

---

[10] *KSR International Co. v. Teleflex, Inc.*, 550 U.S. __, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (The Supreme Court rejected the rigid application of the TSM test used by the PTO, and instructed both the courts and the PTO that a combination of known elements is likely to be obvious "when it does not more than yield predictable results," and that "common sense", not just the prior art, must be considered in evaluating whether a combination would be obvious to one of ordinary skill in the art.)

*and Mfg. Co.,* 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) (the court granted a stay in a case that was ongoing for 8 years, discovery was complete, summary judgment motions were pending, and the parties were well into their trial preparation, finding " It is simply not efficient to rule on three motions for summary judgment, complete trial, and hold a full jury trial if all or part have to be re-done…The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture").

Issuing a stay pending resolution of the Reexam will also have many other advantages. The Court and the parties will benefit from the PTO's expertise on prior art issues, claim construction, and validity.  The record of the Reexam will likely be introduced at trial, and will reduce the complexity and length of the litigation since many issues will have been considered by the PTO during the Reexam.

The outcome of the Reexam, in any event, will likely encourage a settlement without the further involvement of the Court.  In the absence of a stay, with the unresolved substantial new questions of patentability presented in the Request for Reexam, it is less likely that the case will settle until at least after claim construction and motions for summary judgment.  Thus, without a stay, this Court will most likely be presented with the issue of invalidity prior to settlement with all the Defendants.

Accordingly, a stay pending the Reexam will simplify the issues, encourage settlement, reduce the costs for all involved, and therefore, this factor also weighs heavily in favor of a stay.

> **3.     A Stay is Appropriate at this Stage of the Litigation – Discovery has not Begun, Initial Disclosures have not been Exchanged**

The present case has literally just begun.  At least one defendant, namely GPS Industries, Inc., has not yet answered, having obtained multiple extensions of time to answer.  Intelligolf and Karrier Communications have pending motions to dismiss, on which the Court has yet to

rule.  Indeed, this case is so undeveloped that Defendants were quite surprised the Court issued a Scheduling Order considering the uncertain status of the case and the parties.   Moreover, although the Scheduling Order sets a trial date for January 19, 2009, it is practically impossible to hold that date, and if the present motion for a stay is denied, at least some of the Defendants will be jointly filing a motion to continue the trial and reset the litigation calendar.

Although Plaintiff attempted to serve several discovery requests on or about September 2, 2008, such requests are improper as discovery cannot commence in this case until after the Initial Disclosures, pursuant to Fed. R. Civ. P. Rule 26(d)(1) and L.R. 26.1.F.1.  No parties have yet served Rule 26 Initial Disclosures.  (Decl. NMCohen, ¶ 10).  Furthermore, the Pretrial Order Setting Conference indicates S. D. Fla. L.R. 16.1 applies to the party conference, and L.R. 16.1.B states the conference is "for the purposes prescribed by Fed.R.Civ.P. 26(f)."  Thus, no discovery has properly begun.  And even if discovery has commenced by the time this motion is decided by the Court, it would be very early in the process, and far from complete.

The early timing of the Request for Reexam and this Motion also weighs strongly in favor of granting a stay. *See Magna Donnelly Corp. v. Pilkington N. Am., Inc.,* 2007 WL 772891, at * 4 (E.D. Mich. March 2, 2007) ("The Court concludes that a stay is particularly appropriate at this early stage of litigation, where neither party has conducted fact discovery and answers have just been served . . . [and where] [d]efendants have sought reexamination"); *Tap Pharma. Prod., Inc. v.Atrix Labs Inc.,*  2004 WL 422697 at *1, 70 U.S.P.Q.2d 1319 (N.D. Ill. Mar. 3, 2004 (issuing stay for reexamination where "case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions"); *Softview Computer Prods. Corp. v. Hayworth, Inc.,* 2000 WL 1134471, 56 U.S.P.Q.2d 1633, 1636 (granting stay where discovery had not been completed, where a

Markman hearing had not yet been held, and where summary judgment motions were pending before the court, on grounds that it "would be a serious waste of both the parties' and the Court's resources if [the case went forward] and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding."). *Cf. Gonnocci,* 2003 WL 22870902, 68 U.S.P.Q.2d at 1756 (granting a stay even where "the parties had spent considerable time and resources . . . substantial discovery ha[d] been conducted and the parties ha[d] submitted witness lists and three lengthy summary judgment motions" but where "much remain[ed] to be done by the parties and the Court to prepare this case for trial.").

The *Middleton* case is an excellent example of the liberal policy in favor of stays and the extent to which district courts defer to the PTO.  The *Middleton* litigation had been ongoing for 8 years, discovery was complete, summary judgment motions were pending, and the court noted that the parties were likely deep into their trial preparation.  *Middleton,* 2004 U.S. Dist. LEXIS 16812 at *5 (S.D. Iowa 2004).  Still the court held that judicial economy required a stay, because it would prevent duplication of effort, the reexam would simplify and narrow issues, and the court would benefit from the expertise of the PTO.  *Id.*

In view of the present facts, and the precedent from many district courts, it "would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay." *Magna Donnelly Corp.,* 2007 WL 772891, at * 4.  Therefore, the early status of this case weighs strongly in favor of granting a stay pending the Reexam.

## IV.  CONCLUSION

As set forth above, all of the factors in deciding a stay weigh heavily in favor of granting a stay.  Furthermore, there are no compelling reasons to deny a stay.  Therefore, Defendants' motion to stay pending the resolution of the Reexam should be granted.

Respectfully submitted,

Dated:  September 5, 2008
        Miami, Florida

s/John Fulton, Jr.
John Cyril Malloy, III
Florida Bar No. 964,220
John Fulton, Jr.
Florida Bar No. 173,800
jfulton@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone: (305) 858-8000
Facsimile:  (305) 858-0008

Neal M. Cohen
nmc@viplawgroup.com
James K. Sakaguchi
jks@viplawgroup.com
Valerie L. Sarigumba
vls@viplawgroup.com
VISTA IP LAW GROUP LLP
2040 Main Street, 9th Floor
Irvine, California  92614
Telephone: (949) 724-1849
Facsimile:  (949) 625-8955

Attorneys for Defendant
uPlay, LLC.


With Consent:

s/Paul J. Cronin
pcronin@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Attorneys for Defendants
ProLink Holding Corporation
and ProLink Solutions, LLC.

With Consent:

s/Jacqueline C. Tadros
jtadros@intellectualpropertynow.com
JACQUELINE TADROS, P.A.

500 West Cypress Creek Road, Suite 350
Fort Lauderdale, Florida 33309
Telephone: (954) 351-7479
Facsimile: (954) 351-7417
Attorneys for Defendant
Goodwin Golf Group, LLC


With Consent:

s/Dana Robinson
dana.robinson@l1inc.com
L1 Technologies, Inc.
10180 Telesis Court, Ste. 165
San Diego, CA  92121
Telephone: (858) 300-5513
General Counsel for Defendant
L1 Technologies, Inc.


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(3)

The undersigned states that counsel for uPlay, LLC, Neal M. Cohen, contacted Plaintiff's counsel on August 29, 2008 to see if Plaintiff would join in this Motion to Stay, and Plaintiff declined.

s/ John Fulton, Jr.
John Fulton, Jr.
Florida Bar No. 173,800


## CERTIFICATION PURSUANT TO ADMIN. PROC. 3(I)(6)

The undersigned certifies that pursuant to S.D. Fla. CM/ECF Administrative Procedures, Rule 3(I)(6), a proposed Order has been attached hereto for electronic filing.

s/ John Fulton, Jr.
John Fulton, Jr.
Florida Bar No. 173,800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21496-CIV-MORENO/TORRES

ROBLOR MARKETING GROUP, INC.,

      Plaintiff,

   vs.

GPS INDUSTRIES, INC.,
PROSHOT INVESTORS, LLC,
PROLINK HOLDING CORPORATION,
PROLINK SOLUTIONS, LLC,
INTELLIGOLF, INC.,
KARRIER COMMUNICATIONS,
L1 TECHNOLOGIES, INC.,
LINKS POINT, INC.,
SKYHAWKE TECHNOLOGIES, LLC,
UPLAY, LLC,
GOODWIN GOLF GROUP LLC,
AND
POLARIS GOLF SYSTEMS, INC.,

      Defendants.
_____/

## CERTIFICATE OF SERVICE

     I hereby certify that on September 5, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                        s/ John Fulton, Jr.
                                        John Fulton, Jr.
                                        Florida Bar No. 173,800

**SERVICE LIST**
ROBLOR MARKETING GROUP, INC. V. GPS INDUSTRIES, INC., ET AL.

United States District Court, Southern District of Florida
Case No. 08-21496-CIV-MORENO/TORRES

Alejandro Alvarez
alex@integrityforjustice.com
THE ALVAREZ LAW FIRM
355 Palermo Avenue
Coral Gables, FL 33134
Telephone: (305) 444-7675
Facsimile:  (305) 444-0075
Attorneys for Plaintiff.
Notices of Electronic Filing
generated by CM/ECF.

OF COUNSEL:
John F. Ward
wardj@wardolivo.com
John W. Olivo, Jr.
olivoj@wardolivo.com
David M. Hill
hilld@wardolivo.com
WARD & OLIVO
380 Madison Avenue
New York, NY 10017
Telephone: (212) 697-6262
Facsimile:  (212) 972-5866
Attorneys for Plaintiff.
Served via first class U.S. mail,
postage pre-paid.

Kevin C. Kaplan
kkaplan@coffeyburlington.com
David J. Zack
dzack@coffeyburlington.com
COFFEY BURLINGTON
2699 South Bayshore Drive
Penthouse A
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261
Attorneys for Defendants
Proshot Investors, LLC.,
ProLink Holding Corporation and
ProLink Solutions, LLC
Notices of Electronic Filing
generated by CM/ECF.

John M. Guard
john.guard@hklaw.com
HOLLAND & KNIGHT
100 N Tampa Street
Suite 4100
P.O. Box 1288
Tampa, Florida 33602-3644
Telephone: (813) 227-6485
Facsimile:  (813) 229-0134
Attorneys for Defendants
ProLink Holding Corporation
and ProLink Solutions, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Kenneth G. Parker
kparker@tlpfirm.com
TEUTON LOEWY & PARKER LLP
3121 Michelson Drive
Suite 250
Irvine, CA  92612
Telephone: (949) 442-7101
Facsimile:  (949) 442-7105
Attorneys for Defendants
ProLink Holding Corporation
and ProLink Solutions, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Paul J. Cronin
pcronin@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Attorneys for Defendants
ProLink Holding Corporation
and ProLink Solutions, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Jeffrey Kamenetsky
jkamenetsky@cwiplaw.com
CHRISTOPHER & WEISBERG
200 East Las Olas Boulevard
Suite 2040
Fort Lauderdale, Florida 33301
Telephone: (954) 828-1488
Facsimile:  (954) 828-9122
Attorneys for Defendants
Intelligolf, Inc. and Karrier Communications.
Notices of Electronic Filing
generated by CM/ECF.

Jeff Toler
jtoler@tlgiplaw.com
TOLER LAW GROUP
8500 Bluffstone Cove
Suite A201
Austin , Texas 78759
Telephone: (512) 327-5515
Attorneys for Defendants
Intelligolf, Inc. and Karrier Communications.
Notices of Electronic Filing
generated by CM/ECF.

Albert A. Zakarian
zakarian@tampabay.rr.com
16765 Fish Hawk Boulevard
Suite 360
Lithia, Florida 33547
Telephone: (813) 571-2546
Facsimile:  (813) 251-1933
Attorneys for Defendant
L1 Technologies, Inc.
Notices of Electronic Filing
generated by CM/ECF.

Jordan S. Weinstein
jweinstein@oblon.com
Thomas J. Fisher
tfisher@oblon.com
OBLON SPIVAK McCLELLAND
MAIER & NEUSTADT
1940 Duke Street
Alexandria, Virginia 22314
Telephone: (703) 413-3000
Attorneys for Defendant
SkyHawke Technologies, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Leora Herrmann
lherrmann@kpkb.com
Michael E. Tschupp
mtschupp@kpkb.com
KLUGER PERETZ KAPLAN
& BERLIN
Miami Center
201 South Biscayne Boulevard
Suite 1700
Miami, Florida 33131-8424
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428
Attorneys for Defendant
SkyHawke Technologies, LLC.
Notices of Electronic Filing
generated by CM/ECF.

John Cyril Malloy, III
jcmalloy@malloylaw.com
John Fulton, Jr.
jfulton@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone: (305) 858-8000
Facsimile:  (305) 858-0008
Attorneys for Defendant
uPlay, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Neal M. Cohen
nmc@viplawgroup.com
James K. Sakaguchi
jks@viplawgroup.com
Valerie L. Sarigumba
vls@viplawgroup.com
VISTA IP LAW GROUP LLP
2040 Main Street, 9th Floor
Irvine, California  92614
Telephone: (949) 724-1849
Facsimile:  (949) 625-8955
Attorneys for Defendant
uPlay, LLC.
Notices of Electronic Filing
generated by CM/ECF.

Jacqueline C. Tadros
jtadros@intellectualpropertynow.com
JACQUELINE TADROS, P.A.
500 West Cypress Creek Road, Suite 350
Fort Lauderdale, Florida 33309
Telephone: (954) 351-7479
Facsimile: (954) 351-7417
Attorneys for Defendant
Goodwin Golf Group, LLC
Notices of Electronic Filing
generated by CM/ECF.


Jeffrey E. Forman
jforeman@mflegal.com
Catherine J. MacIvor
cmacivor@mflegal.com
MALTZMAN FOREMAN, PA
2 South Biscayne Boulevard
Suite 2300 One Biscayne Tower
Miami , FL 33131-1803
Telephone: (305) 358-6555
Fascimile:  (305) 374-9077
Attorneys for GPS Industries, Inc.
Notices of Electronic Filing
generated by CM/ECF.