UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21496-CIV-MORENO/TORRES

ROBLOR MARKETING GROUP, INC.,

    Plaintiff,

vs.

GPS INDUSTRIES, INC.,
PROSHOT INVESTORS, LLC,
PROLINK HOLDING CORPORATION,
PROLINK SOLUTIONS, LLC,
INTELLIGOLF, INC.,
KARRIER COMMUNICATIONS,
L1 TECHNOLOGIES, INC.,
LINKS POINT, INC.,
SKYHAWKE TECHNOLOGIES, LLC,
UPLAY, LLC,
GOODWIN GOLF GROUP LLC,
AND
POLARIS GOLF SYSTEMS, INC.,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO STAY LITIGATION
PENDING REEXAMINATION OF U.S PATENT NO. 5,507,485**

    This matter is before the Court upon Defendants' Motion to Stay [D.E. 92] the litigation pending resolution of requests for reexamination filed with the United States Patent and Trademark Office ("PTO") involving the patent in suit, U.S. Patent No. 5,507,485 ("the '485 Patent"). The Court has reviewed the Defendants' motion, the supplemental motion in support [D.E. 166], reply, supplemental affidavits, notices and joinders, as well as Plaintiff's response in opposition and supporting documentation.

The Court also heard extended argument on the issues raised by the pending motion to stay at a hearing conducted October 23, 2008. Upon a review of the entire record in the case, the Court finds that Defendants have met their burden of showing that sufficient cause exists to stay the litigation for a limited period in order to allow potential resolution of pending petitions for reexamination related to the patent in suit.[1]

## *I. BACKGROUND*

All Defendants who have appeared and submitted to the Court's jurisdiction over them in the case are seeking a stay of this action pending resolution of petitions for reexamination filed before the PTO over the patent in suit, the '485 Patent. That patent has 54 claims directed to a portable golf computer having various features such as display means, memory means, position sensing means, and processor means. The complaint alleges that the patent enables users to view various holes on a golf course through the use of a portable device that takes advantage of GPS technology. [D.E. 1 ¶¶20-22]. The complaint identifies various entities that are, in one form or another, infringing or contributing to the infringement of the claims in the '485 patent.

The '485 Patent issued from U.S. Patent Application No. 08/234,420, filed April 28, 1994 ("the '420 application"). The patent issued on April 16, 1996. The parties in

---

[1] As an administrative stay is not intended to be a dispositive ruling, an Order is sufficient to dispose of the pending motion pursuant to the Court's Order of Reference. The entry of the Order, of course, does not preclude any party from seeking review of this Order from the District Judge if that party believes the Order to be clearly erroneous, or if that party desires to pursue any relief before the Court of Appeals, in which case an appeal to the District Judge is a prerequisite before filing a notice of appeal. *See* S.D. Fla. Local Mag.J.R. 4; *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993).

this case are initially disputing what limitations were or were not included within that original application that were relied upon to overcome anticipation and obviousness rejections asserted by the Examiner during the original examination by the PTO. Defendants claim as well that the Examiner did not adequately consider the effect of various prior art references that disclosed a golf rangefinder that uses GPS technology for determining location and a golf rangefinder that uses an accelerometer for determining location coupled with the digitized storage of various scenes of a golf course for display based on the determined location of the rangefinder. Defendants contend that the Examiner overlooked how obvious it was to combine the teachings of these and other references to render obvious (and invalid) many of the claims of the '485 Patent.

Following the issuance of the patent, numerous portable golf GPS devices were developed, and commercialized. Some golf course management systems employ cart-based GPS technology and cart-based visual displays, while others involve handheld GPS devices and software. After several years elapsed between the development of these devices and the date the patent issued, the Plaintiff filed the present lawsuit on May 27, 2008, seeking to obtain damages and injunctive relief against these device manufacturers and/or distributors. Although a Scheduling Order was issued by the Court on August 25, 2008, discovery in this case has not yet materially advanced, based in part upon the filing of several jurisdictional motions that were filed by certain defendants, as well as the fact others had not yet been served.

In the meantime, on August 21, 2008, Defendant uPlay, LLC filed a Request for Ex Parte Reexamination with the PTO, under 35 U.S.C. § 301 et. seq. and 37 C.F.R. § 1.510 (Application No. 90/009,260). This Request for Reexam cited nine pieces of prior art that purportedly raise substantial new questions of patentability – including four references that were allegedly not cited during the original prosecution of the '485 Patent. The Request for Reexam argued that all of the claims of the '485 Patent are invalid as being anticipated and/or obvious over the prior art cited in the Request for Reexam.

Additionally, counsel for Defendants Karrier and Intelligolf filed his own request for reexamination of the '485 patent on or about August 19, 2008 (Application No. 90/010,248). That request cited different pieces of prior art (principally the Germain, Eagle Scoremaster, and Osamu references) that purportedly raised a substantial question of patentability as to many of the same and other claims of the '485 patent. The Germain patent, for instance, discloses a golf scoring system using printed recording cards generated for each hole to assist a golfer in playing that particular hole, which includes data about the distances, layout, weather conditions, etc., and on which a player records her score. An alternative embodiment of that device suggests that a hand-held data recording device, like a portable computer, could be used in place of the play recording cards, which would include much of the same information. The patent also suggests another modification that would allow a GPS transmitter to provide exact location information for each hole of the golf course. Based upon these disclosures, this particular request for reexamination argues that the Germain patent raises substantial questions of patentability as to many of the claims of the '485 patent.

Following the filing of its own request, Defendant uPlay filed the pending motion to stay the litigation pending the conclusion of the reexamination process [D.E. 92]. The motion relies upon the inherent power of federal courts to grant stays pending the outcome of reexamination proceedings that are favored by the law. Defendant's motion argues that a stay would not unduly prejudice the plaintiff's prosecution of the case, especially considering that plaintiff delayed in filing this action for several years after the patent in suit was issued and despite the existence of many allegedly infringing devices in the intervening years. The motion also argued that a stay would simplify the invalidity issues that would need to be resolved in this litigation, which issues may be affected if one or all of the claims are canceled or amended in the reexamination process. Finally, the motion argued that a stay was appropriate given the early stage that this case was in, where little or no discovery had been undertaken and the case was only recently scheduled for trial.

At the time the motion to stay was filed, however, not all the defendants in the case joined in the motion. Defendants Link Point and Polaris Golf Systems had not yet appeared or responded to the complaint (and may still have not yet been served). Defendant Karrier and Intelligolf did not join the motion as they had filed their own separate motion to dismiss for lack of jurisdiction and/or improper venue [D.E. 110]. Thus, these Defendants (though they had their own request for reexamination pending) advised the Court that they agreed with a stay but would not formally join in the motion for fear of waiving their jurisdictional defenses. Moreover, two other defendants who may have joined the motion, L1 Technologies and Skyhawke, have now been dismissed from the case.

Nevertheless, of those defendants that have been served and are not challenging jurisdiction, all of them have officially joined in the motion to stay and the conditional stipulation that has also been filed in support of the stay. Defendants uPlay, Prolink, GPS Industries, Proshot, have all agreed with the following stipulation:

> Defendants may not argue invalidity in the present action based on one or more prior printed publications that were considered by the United States Patent and Trademark Office ("USPTO") in the Reexamination. However, Defendants will be permitted to rely for obviousness on the printed publications that were considered by the USPTO in the Reexamination, in combination with prior art that was not so considered.

[D.E. 167-2]. This stipulation was filed, as is customary in cases like this, to make clear that these Defendants would not be able to raise anew in the litigation the very same invalidity arguments that they were raising through the reexamination process. The parties' supplemental motion has also made clear that their original stipulation, filed in response to Plaintiff's response in opposition immediately following the motion [D.E. 118], applies to any reexamination filed in connection with the '485 patent, not just the reexamination request filed by Defendant uPlay. [D.E. 166, 167].

The filing of this stipulation responds to one of the arguments raised in Plaintiff's response, which argued that if a stay were to be granted it should be conditioned on Defendants' stipulation not to argue in this lawsuit after the stay was lifted invalidity issues that had been based on prior art considered by the PTO during the reexamination. [D.E. 107 at 12]. Additionally, Plaintiff's response argued that a stay was not warranted as most reexamination proceedings prove to be unsuccessful to the petitioning party even though the PTO often grants review to collect reexamination fees. Plaintiff also argued that it would suffer prejudice if a stay was

granted. Plaintiff argued that the case was set for trial in early 2009, a trial period that would be upset if the stay were to be granted pending reexamination, which by itself would prejudice Plaintiff's ability to obtain timely resolution of this case. Moreover, Plaintiff argued that the time that the reexamination would take was uncertain and potentially lengthy. Thus, a delay of that length would unduly impair Plaintiff from resolving this case, with the collateral benefit – resolution of invalidity issues – being entirely speculative. [D.E. 107].

The Court heard argument on the pending motions in the case, especially including the present motion to stay, on October 23rd. Just prior to the hearing, the parties filed notice with the Court of preliminary determinations rendered by the PTO relating to the two requests for reexamination. On October 6, 2008, in response to the Karrier Defendants' counsel's request for reexamination, the PTO granted the request for reexamination with respect to most of the claims in the '485 patent. [D.E. 144-2]. The PTO examiner determined that a substantial new question of patentability affecting claims 1-35 and 37-54 had been raised. The examiner noted, for instance, that the Germain patent cited by the Karrier Defendants' request had not been considered by the original examiner, and its existence thus justified reexamination. Similarly, the examiner found that the other references cited in the request, the Eagle Scoutmaster and Osamu references, had also not been entirely considered and warranted reexamination.

On October 15th, however, the PTO examiner issued a denial of the request for reexamination filed by the uPlay defendants (No. 90/009,260), because the examiner found that the cited references in that request did not present a substantial question

of patentability because, for instance, they did not qualify as prior art. The examiner also disagreed with the petitioner's interpretation of the scope of the inventions included within the cited references such that they did not present a substantial new question of patentability for the '485 patent.

Again, however, all the defendants that have now joined in the pending motion to stay believe that the issues raised in the reexamination proceeding that has been granted by the PTO reexaminer may have a material impact upon the ultimate resolution of this case. They have all agreed that their conditional stipulation applies to either reexamination. And Defendant uPlay pointed out that it was preparing to file a petition for review of the denial of its petition for reexamination [D.E. 176]. That petition for review has apparently not yet been decided. Moreover, the Karrier Defendants are prepared to officially join in the motion to stay and agree to the conditional stipulation if the Court ultimately determines that the Court has personal jurisdiction over these particular defendants. Indeed, these Defendants have requested, and Plaintiff agreed, that the Court address the jurisdictional and venue issues they have raised even if it otherwise stays the litigation.

## II.  ANALYSIS

All the parties to the present dispute agree that federal courts have the inherent power to stay patent litigation pending the outcome of a reexamination request. Federal Circuit precedent that governs this issue establishes that "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination," and that the decision

whether to stay rests "with the sound discretion of the Court." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). This process is considered to be "an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise" and "provide the federal courts with the expertise of the PTO in resolving patent claims." *Id.* at 1426. One purpose of the reexamination procedure is to eliminate trial of invalidity issues when a claim is canceled or, otherwise, to facilitate trial of remaining issues following PTO denial of reexamination and the survival of a claim. *See, e.g., Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Based upon these principles, district courts have thus recognized a "liberal policy in favor of granting stays," *Donnelly Corp. v. Guardian Indus.,* 2007 WL 3104794, at *3 (E.D. Mich. Oct. 22, 2007), and that the PTO reexamination process "should be deferred to by the courts . . . especially where the infringement litigation is in the early stages," *Bausch & Lomb Inc. v. Rexall Sundown, Inc.,* 2008 WL 2097563, at *2 (W.D.N.Y. May 19, 2008). Accordingly, the district courts "have routinely stayed infringement actions pending the outcome of reexamination proceedings." *Middleton, Inc. v. Minn. Mining and Mfg. Co.,* 2004 WL 1968669, at *3 (S.D. Iowa Aug. 24, 2004).

On the other hand, a decision to stay still falls within a court's discretion, and there is no requirement that a court delay judicial resolution in favor of reexamination. *See, e.g., Vikase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed Cir. 2001); *Ethicon,* 849 F.2d at 1428 ("challenging validity in a court and requesting PTO reexamination 'are concepts not in conflict,'" quoting *In re Etter,* 756 F.2d 852, 857

(Fed. Cir. 1985) (en banc)); *Slip Track Systems, Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1341 (Fed. Cir. 1998) (while stay of patent litigation may be appropriate in certain circumstances, where the copending actions are "neither duplicative nor dependent on one another, there is neither any need nor any justification" for a stay).

In determining whether to issue a stay of litigation pending the outcome of a PTO reexamination of the patent in suit, courts generally weigh the following three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *E.g., Baxa Corp. v. ForHealth Technologies, Inc.,* 2006 WL 4756455, *1 (M.D. Fla. May 5, 2006).

Applying these factors here, the Court first finds that Plaintiff faces no material prejudice from a limited stay of the case pending reexamination. There is no dispute that Plaintiff does not produce a product, has no substantial operations, and appears to exist only as a holding company whose only asset is the '485 Patent. It is thus not suffering irreparable harm if a judgment in its favor is not entered in the short term. Plaintiff's remedy in this case is entirely based on money damages. Plaintiff did not seek a preliminary injunction. Moreover, should the PTO uphold the validity of the asserted claims and leave them unchanged from their present form, Plaintiff would be entitled to seek monetary damages, including prejudgment interest, for the entire past period of infringement not excluded by the six year statutory bar under 35 U.S.C. § 286. Thus, a stay of limited duration would not significantly prejudice Plaintiff's

available remedies. *See, e.g., Ricoh Co. v. Aeroflex Inc.,* 2006 WL 3708069, *5-6 (N.D. Cal. Dec. 14, 2006) ("Moreover, Ricoh has indicated that it is not seeking lost profits, but instead is seeking reasonable royalty damages. As a result, the Court finds that a stay would not significantly prejudice Ricoh's potential remedies.").

It is significant that this case is really at the very early stages. Although a Scheduling Order was issued, the parties immediately became embroiled in motions relating to jurisidiction, venue, and this requested stay. Little if any discovery has been undertaken at this point, beyond possibly limited discovery relating to the jurisdiction issues. Much of the work in the case that typically consumes a patent action – extensive merits and expert discovery, claim construction, and motions for summary judgment – has not yet begun. "Taken together, these facts weigh in favor of granting a stay." *Baxa,* 2006 WL 4756455 at *1 (citing *KLA-Tencor Corp. v. Nanometrics, Inc.,* 2006 WL 708661, *2 (N.D. Cal. Mar. 16, 2006) (granting stay of litigation pending PTO reexamination because "this case is still in the early stages and the parties have not yet conducted 'significant discovery' or invested 'substantial expense' into the litigation"); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 1995 WL 20470,*1-2 (N.D. Cal. Jan. 13, 1995) (granting stay of litigation pending PTO reexamination where case at early stages and requester did not delay in filing reexamination request)).

The Court would also not permit a stay in this case to result in an undue or indefinite protraction of this litigation. That a stay will delay the progress of litigation "is not a dispositive issue as it is common to all stayed cases." *Stryker Trauma S.A. v.*

*Synthes (USA),* 2008 WL 877848 at *2 (D.N.J. Mar. 28, 2008). Rather than being a reason for denying a stay, the resulting "delay in proceedings serves the interests of correctness and finality, by assuring that any decision by the PTO can be taken into account by [the] court prior to further proceedings" even though it "necessarily results in deferral of the final outcome of this case." *Id.* The Court now knows that at least one reexamination proceeding will be undertaken by the PTO. This Reexamination must be conducted with "special dispatch", i.e., ahead of other applications. *See* 35 U.S.C. § 305; 37 C.F.R. § 1.550; MPEP § 2254. Moreover, as the '485 patent is in litigation, the PTO will give it "priority over all other cases", and if the present action is stayed pending the Reexam, the PTO will further expedite the procedure. *See* MPEP §2261 and MPEP § 2686.04(l) ("Action on [a reexamination of a patent in litigation] will be given precedence to any other action taken by the examiner in the Office;" and where "litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible. Cases will be taken up for action at the earliest time possible, and time periods set in actions may be extended only upon a strong showing of sufficient cause").

As a result, the Court will grant the stay for an initial six-month period, after which the Court will require the parties to provide a status report as to the pending reexamination process. At that point, if the conclusion of the reexamination is not imminent, the Court can then consider whether a continued stay should be entered. Alternatively, the Court may then find that the interests of justice preclude a continuation of a stay if the time period may prove to be too lengthy. Again, however,

the Court will monitor the case in its closed state to assure that Plaintiff suffers no undue prejudice from a protracted and indefinite postponement of the case.

The Court also finds that a stay in this case is not being pursued for dilatory purposes or to gain an unfair tactical advantage. Here, the Request for Reexam that has already been granted is based in large part on prior art that the examiner found was never addressed by the original patent examiner. Moreover, the petition was filed shortly after the litigation was filed, and at a very early stage of the case. The requests were filed within a few months after the complaint in this case was filed, and this motion to stay was filed within 15 days after the Defendant uPlay's filing of its Request for Reexam. There is thus no basis to find from this record that dilatory motives or unfair tactical advantage are present.

Second, the Court finds that a stay will simplify the issues and materially benefit the resolution of this case. If the parties continue to litigate the invalidity issues over the '485 patent now, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

Here there is a substantial question of patentability that the PTO reexaminer has found there to be in response to prior art cited by the Karrier petitioner. The relevance of the Germain reference to virtually all of the claims in this patent is a matter that may prove to be materially significant. The PTO reexaminer has found that this reference was never considered. His review of the reference discloses that

there are material elements in that patent that may read on several or most of the claims in this patent in suit. There is thus a serious question in the Court's mind whether these claims will survive reexamination. On the other hand, if they do survive reexamination, the burden on the Court in addressing remaining invalidity issues may be greatly lessened. The fact that the Germain patent may no longer be relied upon, by itself, to raise an invalidity defense may materially strengthen Plaintiff's case and lead to a quicker and less complex resolution of its case.

Accordingly, the benefits in litigation of having the PTO's decision after the Reexam are concrete, numerous, and well-recognized, as many federal courts have expressed in the context of reexamination proceedings, including: (1) furthering judicial economy; (2) determining validity; (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties. *See, e.g. DataTreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006).[2]

Moreover, assuming some of the claims are only amended (but not canceled) during reexamination, pursuing the litigation now without a stay presents a strong likelihood that significant resources will be expended on discovery, claim construction, summary judgment motions, and potentially trial, which would have to be re-done in view of the outcome of the reexamination. Again, the "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate

---

[2] Recent PTO statistics show that patents subject to ex parte reexamination result in claims being canceled or amended in 75% of cases. In other words, in only 25% of cases are all of the claims confirmed in an ex parte reexamination. In addition, in 11% of cases all claims are canceled. [D.E. 116-2 (Decl. of Neal M. Cohen) ¶11].

trial of that issue by providing the district court with the expert view of the [PTO] (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983); *see also Middleton,* 2004 WL 1968669 at *2-4 (granting stay in case that had been pending for greater time and shortly before trial because "[i]t is simply not efficient to rule on three motions for summary judgment, complete trial, and hold a full jury trial if all or part have to be re-done. . . . The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture").

Thus, issuing a stay pending resolution of the PTO's reexamination will have many practical advantages. The Court and the parties will benefit from the PTO's expertise on prior art issues, claim construction, and validity. The record of the reexamination proceedings will likely be introduced at trial, and will reduce the complexity and length of the litigation since many issues will have been considered by the PTO. The outcome will likely encourage a settlement without the further involvement of the Court, especially if the patent survives reexamination largely intact. In the absence of a stay, with the unresolved substantial new questions of patentability before us, it is less likely that the case will settle until at least after claim construction and motions for summary judgment that raise the very same invalidity arguments that the PTO will be considering at the same time. The Court thus finds that the pending reexamination and this litigation will involve duplicative issues, and the outcome of this case may materially depend on the outcome of the reexamination. Thus, according to the Federal Circuit, these considerations fully support the issuance

of a stay of litigation pending reexamination. *See Slip Track,* 159 F.3d at 1341 (approving of stays issued in *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378 (N.D. Cal. 1994), and *NL Chems. Inc. v. Southern Clay Prods. Inc.,* 1989 WL 214495 (D.D.C. Nov. 20, 1989)).

Accordingly, a stay pending the Reexam will simplify the issues, encourage settlement, reduce the costs for all involved, and therefore, this factor also weighs heavily in favor of a stay.

Third, and finally, as the Court alluded to earlier in the discussion, a stay is appropriate at this early stage of the litigation. The present case has literally just begun. This relevant factor overwhelmingly supports a stay under these circumstances. *See, e.g., Magna Donnelly Corp. v. Pilkington N. Am., Inc.,* 2007 WL 772891, *4 (E.D. Mich. Mar. 2, 2007) ("The Court concludes that a stay is particularly appropriate at this early stage of litigation, where neither party has conducted fact discovery and answers have just been served . . . [and where] [d]efendants have sought reexamination"); *Tap Pharma. Prod., Inc. v.Atrix Labs Inc.,* 2004 WL 422697, *1 (N.D. Ill. Mar. 3, 2004) (issuing stay for reexamination where "case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions").

Indeed, at this stage the Karrier and Intelligolf Defendants have pending motions to dismiss that raise significant jurisdictional questions that have not yet been ruled upon. As a result, even without a stay a modification in the early Scheduling Order issued in this case is likely. In deference to the Plaintiff's request, the Court's

stay of the litigation *will not* stay litigation directed at any jurisdictional or venue defenses that have been raised in the case. The stay will relate certainly to the merits of the infringement action and the invalidity defenses that have been raised. The case will administratively be stayed for those purposes, but while we await the result of the reexamination the Court and necessary parties will be addressing the jurisdictional motions and dispose of them in the interim period.

Consequently, when the stay is lifted the Court and parties will then be in a position to immediately tackle the substantive issues that remain following the reexamination process.

### III.  CONCLUSION

As set forth above, all of the factors in deciding a stay weigh heavily in favor of granting a stay of a case at its early stages like this one. Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant uPlay's Motion to Stay Pending Reexamination [D.E. 92] and Supplemental Motion to Stay [D.E. 166] are **GRANTED** subject to the conditions set forth herein.

2. The Court's stay is premised on its acceptance of the party Defendants' stipulations [D.E. 118, 166, 167]. Defendants Karrier and Intelligolf shall also file similar stipulations in the event that the Court denies their motions to dismiss or transfer. Failure of any defendants to agree to these stipulations will require the Court to vacate its administrative stay.

3.  The case will be Administratively Stayed for six months pending the resolution of the PTO's reexamination process. At that point, the party Defendants shall file a status report, no later than June 19, 2008, advising as to the status of proceedings, if not sooner when appropriate.

4.  The administrative stay of the case shall exclude the resolution of any motions that are currently pending related to jurisdiction or venue issues. For that purpose, any discovery that either party wishes to obtain in response to Karrier's Revised Motion to Dismiss for Jurisdiction and Improper Venue [D.E. 174] shall be conducted by January 16, 2009. Plaintiff may by that date file a supplemental response if it wishes, and Karrier shall file a supplemental memorandum no later than January 23, 2009. An evidentiary hearing may have to be scheduled on the motion at that point in time depending on the state of the developed record.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of December, 2008.

_____
EDWIN G. TORRES
United States Magistrate Judge