## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.08-21496-CIV-MORENO/TORRES

ROBLOR MARKETING GROUP, INC.,

      Plaintiff,

vs.

GPS INDUSTRIES, INC., *et al.*,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## KARRIER COMMUNICATIONS' MOTION TO DISMISS FOR
## LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

This matter is before the Court on Defendant Karrier Communications's ("Karrier") Motion to dismiss Roblor Marketing Group, Inc.'s ("Roblor") Complaint for lack of personal jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] [D.E. 61; 174].

### I.   BACKGROUND

#### 1.   *Procedural Background*

On May 23, 2008, Roblor filed a Complaint against twelve defendants, including Karrier, for infringement of United States patent No. 5,507,485 (the "Patent") in the Southern District of Florida. The patent was issued on April 16, 1996 and features a

---

[1]  On August 26, 2008, the Honorable Federico A. Moreno referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law, with respect to any and all pretrial matters.  [D.E. 78].

portable device including GPS technology that enables users to, among other things, view golf courses and keep track of their shots and scores.

On August 15, 2008, Karrier filed a Motion to dismiss for improper venue alleging that: (1) venue is not available over Karrier as an individual under 28 U.S.C. § 1391 and specifically § 1391(c); (2) 28 U.S.C. § 1400(b) is the exclusive venue provision applicable to Karrier; (3) Karrier resides in another state, *i.e.* California and is not a corporation; (4) Karrier does not have a regular place of business in the Southern District of Florida; (5) Karrier has not performed any act of infringement of the Patent in the Southern District of Florida; and finally (6) Roblor has not even alleged facts that would support venue in the Southern District of Florida. [D.E. 61].

On September 03, 2008, Roblor filed a Response and reiterated that venue is proper because: (1) Karrier is a partnership and not a sole proprietorship; (2) therefore, Karrier is subject to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(b) as a partnership and resides in Florida; and (3) Karrier has committed acts of infringement and has a regular and established place of business in Florida. [D.E. 80]. On September 8, Karrier replied. [D.E. 94].

Following a hearing on this and other motions, on October 29, 2009, Karrier filed, with leave of this Court, a supplemental Motion to dismiss adding a lack of personal jurisdiction claim to its improper venue argument. [D.E. 173-74]. Specifically Karrier alleges that the Southern District of Florida does not have jurisdiction over it because the Florida's long-arm statute does not apply to Karrier's actions or,

2

alternatively, because jurisdiction in Florida over Karrier would not meet the requirements of constitutional due process.  (Karrier's Revised Mot. to Dismiss 10-18).

On December 11, 2008, this Court gave the parties the opportunity to file supplemental memoranda with respect to Karrier's and Intelligolf, Inc's ("Intelligolf") Motions to dismiss for lack of jurisdiction and improper venue no later than January 23, 2009.[2] [D.E. 179].  On January 13, 2009, we granted Roblor's Motion for extension of time to complete jurisdictional discovery allowing the parties to conduct discovery through February 27, 2009 and directing Roblor to supplement its opposition to the pending Motions to no later than March 13, 2009.  [D.E. 185].  On February 24, 2009, we entered an order on a Motion for clarification extending the jurisdictional discovery deadline to March 20, 2009 and the deadline for filing supplemental memoranda for all parties to April 3, 2009.  [D.E. 191].  Finally, on March 18, we issued an order granting Karrier and Intelligolf Inc. ("Intelligolf") an extension of time to file their supplemental memoranda until April 10, 2009.

While Roblor saw no need to file a supplemental memorandum, Karrier and Intelligolf jointly filed a sealed memorandum on the results of the jurisdictional discovery undertaken in support of their respective Motions to dismiss.  [D.E. 203-4].

---

[2]    The Court also stayed the case pending resolution of the Patent and Trademark Office's reexamination process but exempted the pending issues from that stay. [D.E. 177].

3

2.    *Facts Material to the Motion*

Roblor is a corporation with a place of business located in Pompano Beach, Florida. (Roblor's Compl. 2). Roblor is the owner of all rights, title and interests in and to the Patent, including the right to sue. *Id.*

Karrier is a business registered in California as an individual and only licensed to do business in California. (Karrier's Revised Mot. to Dismiss Ex. A). Karrier's activity is listed as "computer services and web design" and Karrier mainly provides marketing services for engineers. (Karrier's Revised Mot. to Dismiss Ex. B).

Michael Bryant and James Simpkins developed the allegedly infringing software application Intelligolf. (Karrier's Revised Mot. to Dismiss Ex. C, D). They then marketed Intelligolf through Karrier as Karrier's independent contractors. *Id.* In 2007, Karrier stopped marketing the Intelligolf software and assigned to Intelligolf all rights, titles, and interests in the Intelligolf software. (Karrier's Revised Mot. to Dismiss Ex. A, C, D).

Karrier does not have an address, offices or employees in Florida. (Karrier's Revised Mot. to Dismiss Ex. A). Karrier does not have a telephone number and does not receive telephone messages and mails in Florida. (Karrier's Revised Mot. to Dismiss Ex. B). Karrier does not sell or make demonstrations in Florida. *Id.* Its only contact with Florida is its two websites, www.karrier.com and www.karriercomunications.com, which are identical and consist of one web page advertising Karrier's marketing services for engineers. (Karrier's Revised Mot. to Dismiss Ex. F; G). The message displayed invites potential customers to contact

4

Karrier through its e-mail.  *Id*.  Karrier's websites page also informs that "Karrier Communications' clients have included ... the inventors of ... Intelligolf."  *Id*.  No sale or commercial exchange, however, can be made through the websites.[3]  *Id*.  Yet Karrier's websites are accessible world-wide.  *Id*.

## II.   ANALYSIS

### A.   *Dismissal for Lack of Personal Jurisdiction*

Karrier alleges that this Court lacks subject-matter jurisdiction because Karrier's activities do not meet the requirements of the Florida long-arm statute and, in the alternative, due process prevents this Court from exercising jurisdiction over Karrier.  (Karrier's Revised Mot. to Dismiss 11-14).

### 1.   *Applicable Law*

Federal Circuit law governs the issue of whether a court has personal jurisdiction over a defendant in a patent infringement claim.  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir.1995)).

Federal Rule of Civil procedure 12(b)(2) allows a dismissal of a complaint for lack of personal jurisdiction.  Fed. R. Civ. Pro. 12(b)(2).  "[I]n the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that

---

[3]     Roblor alleges that Intelligolf's product can be purchased through "Karrier'sIntelligolf website."  (Roblor's Resp. to Karrier Mot. to Dismiss 6).  Roblor's allegation that Karrier had control over Intelligolf website at the time the Complaint was filed is not adequately supported in this record.  In any event, we find that the Intelligolf website is insufficient to support personal jurisdiction over Intelligolf, as well as Karrier to the extent that website is relevant here.

defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc.,* 340 F.3d at 1349 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993) (stating the burden of proof in a patent infringement action) (citing *Prentice v. Prentice Colour, Inc.,* 779 F. Supp. 578, 586 (M.D. Fla.1991)). "If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint." *Id.*

### 2.  *The Florida Long-Arm Statute*

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996) (citing *Cable/Home Commc'n v. Network Prod's*, 902 F.2d 829, 855 (11th Cir.1990)).

Roblor alleges that this Court has personal jurisdiction over Karrier.  (Roblor's Resp. to Karrier's Mot. to Dismiss 5-7)  Because we find insufficient minimum contacts exist between Intelligolf and Florida under the due process clause and this finding is

dispositive of the Motion to dismiss, we will assume that Roblor has satisfied the pleading requirements of the Florida long-arm statute,  Fla. Stat. § 48.193.

### 3.    *Due Process*

If personal jurisdiction is established under the state statute, the Court must determine whether jurisdiction satisfies the requirements of the Due Process Clause. U.S. Const. amend. V; *see Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002).  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citing *Int'l Shoe Co.,* 326 U.S. at 316 ).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*  (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The defendant's conduct and connection with the forum State have to be such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

These principles are applied to different forms of personal jurisdiction, specific and general jurisdiction.  Specific jurisdiction attaches only to suits arising from a defendant's contact with the forum, whereas general jurisdiction can more broadly attach to suits unrelated to defendant's contacts with the forum.  See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 n.8-9 (1984).  Roblor did not specify whether it asserts general and special jurisdiction over Karrier.  (Roblor's Compl. 4-5)).  We find that neither basis for jurisdiction exists.

(a)      *Specific Jurisdiction*

Where specific jurisdiction is asserted, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp.*, 552 F.3d at 1332.

i.   *Activity Purposefully Directed to the Residents of the Forum*

If Karrier had purposefully targeted its activity to the residents of Florida, Karrier could have done so only through its websites.  Karrier does not have any other contacts with Florida.  Karrier does not have an address, offices, or employees in Florida.  (Karrier's Revised Mot. to Dismiss Ex. A).  Karrier does not maintain a telephone number in Florida.  Karrier does not advertise or sell in Florida.  Craig Schmidt declared that "Karrier has -- in the last five years has [sic] never sold directly to anyone in the state of Florida." (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-18).  However, its websites are accessible to Florida residents. (Karrier's Revised Mot. to Dismiss Ex. F; G).

In order to find jurisdiction based on the existence of a website, some courts have accepted that a "highly transaction-oriented website" may by itself give rise to personal jurisdiction, referring to the "sliding scale" analysis adopted by one district court. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). *Zippo Manufacturing* explained the sliding scale analysis as follows:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well [-]developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

This sliding-scale analysis assesses the sufficiency of the minimum contacts by measuring the degree of activity or passivity of the website.  Following this analysis, Karrier's websites are undoubtedly passive.  Karrier's website pages only display contact information.  No communication or sale can be made through the websites. The websites invite potential customers to contact Karrier through its e-mail but no e-mail can be posted on the websites.  Purely under a sliding scale analysis, therefore,

Karrier's passive websites would be insufficient minimum contacts by themselves for this Court to find personal jurisdiction over Karrier.

We add, however, that the email address displayed on Karrier's websites is in the form of a hyperlink, which arguably renders the website less passive and more interactive. But even assuming that this feature *per se* would requalify Karrier's websites as interactive, jurisdiction would still not be warranted.

When a website is interactive, the exercise of jurisdiction is determined by examining (1) "the level of interactivity" and (2) "the commercial nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co.*, 952 F. Supp. at 1124. The level of interactivity is very low as the only interactive feature is the hyperlinks. With respect to the second prong of the inquiry, while the information posted by Karrier is purely commercial in nature, there is no *exchange* of information on the websites. Accordingly, we find that personal jurisdiction would not be warranted under a pure sliding scale analysis of this website.

However the Federal Circuit has not yet addressed what weight, if any, should be given to the sliding scale of interactivity analysis. Other circuits have addressed the issue.

Some circuits have embraced this analysis. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (recognizing the *Zippo case* as a "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the sliding scale analysis to assess *general* jurisdiction, even though the Fifth Circuit later

recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry" *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (finding that "the common thread, well stated by the district court in *Zippo,* is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'").

Some circuits have adopted the sliding scale of interactivity as one factor among others to define the purposeful availment factor. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (adopting and adapting the sliding scale analysis); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002); *Lakin v. Prudential Sec.*, Inc. 348 F.3d 704, 711 (8th Cir. 2003) (holding that the "Zippo model is an appropriate approach in cases of specific jurisdiction").

Where the *Zippo* model has not been expressly adopted, some circuits, including the Federal Circuit, nevertheless have used the distinction between active, passive, and interactive website as one factor, among others, to determine the appropriateness of personal jurisdiction over a defendant. *See McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum ... Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004) (holding that "Premising personal jurisdiction on the maintenance of a website,

without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country"); *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (drawing the distinction between active, passive and interactive websites to assess general jurisdiction); *Trintec Indus., Inc.,* 395 F.3d at 1281("Although [plaintiff] has shown that [defendant]'s websites contain some interactive features aimed at transacting business, it is unclear how frequently those features are utilized or, indeed, whether any District residents have ever actually used [defendant]'s website to transact business").

While many circuits have adhered to the sliding scale analysis, some have opted for a more restrictive reading of the *Zippo* case. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (holding that while the sliding scale analysis may "help frame the jurisdictional inquiry in some cases ... 'it does not amount to a separate framework for analyzing internet-based jurisdiction.'... Instead, 'traditional statutory and constitutional principles remain the touchstone of the inquiry' ... As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations").

Finally, one circuit disfavors the use of the sliding scale analysis altogether to assess personal jurisdiction. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510-511 (D.C. Cir. 2002) (opting for the traditional notions of personal jurisdiction when assessing general jurisdiction on the ground that"'Cyberspace' ... is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks

and mortar.   Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet").

It is worth noting that the Eleventh Circuit also recognized the criticism surrounding the *Zippo* case:

> While many courts have utilized the *Zippo* test in one form or another, scholars have generally been critical of the *Zippo* construct. One commentator has argued that *Zippo*'s interactivity litmus test is inconsistent with traditional due process analysis because it excludes all "passive" websites from supporting personal jurisdiction even though the level of interactivity is of minimal significance with respect to whether a defendant has directed the website towards the forum. A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts,* 2006 U. Ill. L.Rev. 71, 86-103 (2006). Rather than utilizing such an artificial approach, Professor Spencer argues that courts should simply apply traditional analysis-looking to whether (1) the defendant directed the internet activity into the state, (2) the internet contact gave rise to the cause of action, and (3) the exercise of jurisdiction is constitutionally reasonable. *Id.* at 109-11. Another commentator, although arguing that the traditional personal jurisdiction approach should yield in the Internet context, has noted that *Zippo*'s interactivity model is somewhat unpredictable and should be modified to preserve the constitutionally required "foreseeability" and "fairness" principles. *See* Reid, *supra* at 259-62. Under the proposed modified approach, a finding that the website was highly interactive for purposes of *Zippo* would only give rise to a presumption of purposeful availment, allowing a defendant to proffer evidence that it was not purposefully targeting the forum. *See id.*

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 2009 WL 330935, at *4 (11th Cir. 2009).  While the Eleventh Circuit discussed the *Zippo* case and the criticisms surrounding it, it declined to express any firm opinion as to its applicability.

The district courts in the Eleventh Circuit are split on the issue.  Some have applied *Zippo* as persuasive precedent.  *See Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1382 (S.D. Fla. 2004) (citing Florida courts having applied the *Zippo* analysis); *Miller v. Berman*, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003) (citing the *Zippo* case and concluding that "[i]n order to determine whether personal jurisdiction can be exerted over Defendants in this instance the Court must examine the nature of the interaction between Mr. Miller and Defendants over the Internet"); *Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 WL 4724495, at *8 (S.D. Fla Oct. 24, 2008) (citing *Zippo* and assessing jurisdiction pursuant to the nature of the defendant's website).  Other Florida courts have departed from the *Zippo* approach, arguing that "website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative."   *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1125 (M.D. Fla. 2006).

We share in the criticism of over-reliance on the sliding scale of interactivity analysis.  The sliding scale offers little guidance in the case of a defendant running a website that falls in the middle ground.  Moreover, this test is likely to be too rigid with regards to the passive and active categories of websites.  Passive websites could very well target a specific forum state and give rise to personal jurisdiction.  Similarly, an active website, which does not target a forum state, should perhaps not give rise to personal jurisdiction by itself.  That is the outcome reached in the *Toys "R" Us* case.  *Toys "R" Us, Inc.*, 318 F.3d at 454.  The Third Circuit found that the defendant's website, "while commercial and interactive," did "not appear to have been designed or

intended to reach customers [in the forum state]." *Id.* The website was entirely in Spanish, the prices based on foreign currency, and merchandise could only be shipped within Spain. In that respect, the sliding scale analysis was inappropriate.

It is worth noting that the *Zippo* court, while establishing the sliding scale analysis, ultimately did not rely on it. *Zippo Mfg. Co.*, 952 F. Supp. at 1125-27; *Best Van Lines, Inc.*, 490 F.3d at 251 (2d Cir. 2007) (observing that the *Zippo* court relied on the actual interactions of the defendant with the forum residents). Many courts may have given more weight to the sliding scale analysis than the *Zippo* court itself intended to do.

Critics of the *Zippo* analysis advocate a return to traditional notions of personal jurisdiction. *See Gorman*, 293 F.3d at 510-511 (D.C. Cir. 2002); A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts,* 2006 U. Ill. L.Rev. 71, 86-103 (2006). It is doubtful, however, that the *Zippo* court meant to forgo these traditional notions to the exclusive control of the sliding scale analysis. To the contrary, *Zippo* did analyze whether the defendant purposefully availed itself of doing business in the forum state and pointed out that: "[t]raditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper ... Different results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. Accordingly, the sliding scale analysis was probably only meant to be used as a tool to determine the purposeful availment

of a defendant to a forum and not as an exclusive "separate framework."[4]

Given no clear holding on the issue from the Federal Circuit and the divergent outcomes reached among the circuits, we decline to find that our determination under the sliding scale analysis is dispositive. We will use it as a guidepost but also turn to analyze the purposeful availment requirement under a more traditional approach. The outcome of that broader traditional analysis, however, is the same.

To assess whether Karrier purposefully availed himself of the Florida forum, we need to analyze both its website activity as well as its actual interactions with the state of Florida. However, there is no evidence in the record of any actual interaction with the state of Florida. The mere world-wide accessibility of Karrier's websites in the absence of any actual interaction will not support a finding that jurisdiction attaches.

Finally, the key element to the due process analysis is foreseeability. "The defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. There must be some degree of predictability "that allows potential defendants to structure their primary conduct with some minimum assurance as to

---

[4] Judge Jordan from our Court appears to have taken that view in a case where the sliding scale analysis was cited to establish general jurisdiction over a non-resident defendant that maintained an interactive website. "Indeed, while the law may still be unsettled in the Eleventh Circuit, other circuits have required that for personal jurisdiction to be based on a website – even an interactive one – it must be shown that the owner of the website manifestly intended to target citizens of the forum state." *Estate of Fraser v. Smith,* 2007 WL 5007084, at *8 (S.D. Fla. Nov. 13, 2007) (dismissing case based on lack of personal jurisdiction despite the existence of the interactive website because there was no record of any targeting of Florida residents).

where that conduct will and will not render them liable to suit." *Id.*  In this case, Karrier could not have foreseen being haled in Florida.  Karrier is not licensed to do business in Florida and has no income from direct Florida sales.  Karrier has no agents, resellers, and distributors , nor any presence whatsoever in Florida.  Karrier has never targeted Florida residents through an advertising campaign.  There is no evidence tha Karrier holds any bank account or has any investments in Florida, nor pays taxes here.  Karrier have not contracted with any party in Florida.  Roblor has not presented any evidence supporting that Florida was a predictable forum for Karrier.

Accordingly, even though the analysis applicable to website activity for purposes of personal jurisdiction is not well-settled, our analysis concludes that the type of websites that Karrier maintains does not give rise to personal jurisdiction in Florida.

In addition, this Court could assert jurisdiction over Karrier only if the second and third prongs are satisfied.  They too have not been met in this case.

### ii.  Karrier's Forum-Related Activities

To assert specific jurisdiction, the claim asserted by Roblor must arise out of Karrier's forum-related activities.  However, there is no evidence of any Florida-related activities by Karrier, except through its websites.  The websites do not allow, directly or even remotely, to sell the allegedly infringing software.  Therefore Karrier's Florida-related activities are insufficient to meet the second prong of this inquiry.

### iii.  Reasonableness and Fairness

"With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*." *Avocent Huntsville Corp.*, 552 F.3d at 1332; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The five *Burger King* factors to weigh are: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;"(3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.*

We find that the burden on Karrier to litigate in Florida would be substantial given that Karrier is a very small business.  Craig Schmidt, the sole owner of Karrier, resides in California and testifies that litigating in Florida will disrupt Karrier's business. (Karrier's Revised Mot. to Dismiss Ex. 2).  Considering the very few contacts Karrier has with the state, Florida's interest in the issue is quite limited.  Even though it would be more convenient for Roblor to obtain relief in Florida, this convenience is far outweighed by Karrier's burden to litigate here.  The last factor does not weigh in favor of any party.  In sum, these factors weigh against a finding of jurisdiction over Karrier.

We conclude, therefore, that the Court lacks specific personal jurisdiction over Karrier in this action.  The motion to dismiss on this basis should be granted.

(b)     *General Jurisdiction*

It is unclear whether Roblor asserts general jurisdiction over Karrier. (Roblor's Compl. 4-5).  We will address the issue just in case it does.

18

"[A]n assertion of *general* jurisdiction "requires that the defendant have continuous and systematic contacts with the forum state, and that such activity will confer [ ] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp.,* 552 F.3d at 1331-32 (quotations omitted). "[T]hese contacts must be 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" *In re Farmland Indus., Inc.*, 2007 WL 1018367, at *3 (M.D. Fla. March 20, 2007) (citing *Hockerson Halberstadt, Inc v. Propet USA, Inc.*, 62 Fed. Appx. 322, 337 (Fed. Cir 2003)).

There is *nothing* in the Motion to dismiss record evidencing Karrier's continuous and systematic contacts with Florida.  Karrier is not licensed to do and does not carry out business in Florida.  (Karrier's Revised Mot. to Dismiss Ex. B).  Karrier has no address, office, or employees in Florida.  *Id.*  Karrier never had any physical presence of any kind in Florida.  (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19). No advertising or marketing has been directed at Florida.  (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19).

Accordingly, we find that asserting general or specific jurisdiction over Karrier would not meet constitutional due process requirements.

### B.    *Dismissal Based Upon Improper Venue*

Karrier alleges that Roblor's complaint should be dismissed because venue is improper in the Southern District of Florida, pursuant to 28 U.S.C.A. § 1400(b), which

is the only statute applicable to sole proprietorships. (Karrier's Revised Mot. to Dismiss 3-4).

Karrier submitted several affidavits and other materials to support its contention that Karrier is a sole proprietorship. Karrier provided a copy of Karrier's business license identifying Karrier as a business carried by a sole individual. (Karrier's Revised Mot. to Dismiss Ex. 1). Karrier also furnished the affidavits of Craig Schmidt, the owner of Karrier, Michael Bryant, and James Simpkins, the alleged "partners" of Karrier, all of which declare under penalty of perjury that Karrier is a sole proprietorship. (Karrier's Revised Mot. to Dismiss Ex. 2-4). Finally, Karrier included in his Motion 1099 Forms showing that Michael Bryant, and James Simpkins were remunerated as independent contractors. (Karrier's Revised Mot. to Dismiss Ex. 5-8). Therefore, the evidence before this Court supports Karrier's contention.

Roblor responds that the three same individuals, Craig Schmidt, Michael Bryant, and James Simpkins, asserted in a recent lawsuit filed by Karrier in the Western District of Washington that they collectively carry business under the name "Karrier Communications." (Roblor's Resp. to Karrier's Revised Mot. to Dismiss 3; Ex. A-B). But Roblor has not shown that this single assertion satisfies the elements required for judicial estoppel. And in the absence of any authority establishing that a prior acknowledgment that a business entity may be a partnership affects this business's status for venue purposes, this Court will not give much weight to this argument.

In any event, there is enough evidence as a whole supporting the finding that Karrier is a sole proprietorship without the need to consider the declarations of Craig Schmidt, Michael Bryant, and James Simpkins.  Therefore, we find that Karrier is a sole proprietorship.  Thus under Rule 28 U.S.C.A. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C.A. § 1400(b).

Section 1400(b) is the exclusive provision controlling venue in patent infringement actions against individuals.  *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229 (1957).  Sole proprietorships are regarded as individuals for venue purposes.  *Kabb, Inc. v. Sutera*, 1992 WL 245546, at *2 (E.D. La. Sept 4, 1992) (stating that a sole proprietorship is just "an individual doing business under a trade name"); *See also Blue Compass Corp. v. Polish Masters of America*, 777 F. Supp. 4, 5 (D. Vt. 1991); *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp.2d 449, 459 (S.D.N.Y. 2000) (holding that "expanding the definition of 'corporation' to include sole proprietorships would be overly burdensome and inconvenient to sole proprietors, most of whom would be unable to afford the expense of litigating in distant states").

It is undisputed that Craig Schmidt, the owner of Karrier, resides in California. ( Karrier's Revised Mot. to Dismiss Ex. 2).  Craig Schmidt declares that Karrier's sole place of business is his home.  (Karrier's Revised Mot. to Dismiss Ex. 2).  Even if Karrier has an office in Washington, as suggested by Roblor by reference to the Complaints filed by Karrier in the Western District of Washington, that still does not

21

establish residency in the Southern District of Florida.  (Roblor's Resp. to Karrier's Revised Mot. to Dismiss 3; Ex. A-B).  Accordingly, the Southern District of Florida is not a proper venue under the first prong of § 1400(b).

The second prong of § 1400(b) mandates that venue is proper if two conjunctive conditions are meet: the defendant has committed acts of infringement and has a regular and established place of business in the district where it is sued.  *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1248 (S.D. Ala. 2006).

"Section 1400(b) does not define what is meant by the term 'regular and established place of business,' and case authorities have reached disparate conclusions as to its precise definition."  *HomeBingo Network*, 428 F. Supp. 2d at 1249.  The United States Supreme Court has reminded us that § 1400(b) should not be given a "'liberal' construction."  *Schnell v. Peter Eckrich and Sons, Inc.*, 365 U.S. 260, 264 (1961); *Lex Tex Ltd v. Aileen, Inc.*, 326 F. Supp. 485, 487 (S.D. Fla. 1971).  Therefore the "permanent and continuous presence" inquiry, which is applicable to corporate defendants, cannot be applied to a non-corporate defendant.  *HomeBingo Network*, 428 F. Supp. 2d at 1249 (citing *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir.1985)).  Rather, "[a] defendant must be regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control."  *Hsin Ten Enter. USA, Inc.*, 138 F. Supp. 2d at 461 (citing *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 987 (S.D.N.Y. 1992)) and finding that venue was improper in the Southern District of New York pursuant to § 1400(b) even though defendant's interactive website supported

personal jurisdiction there). Mere solicitation of orders in a district is not sufficient by itself to establish that a defendant had a regular and established place of business in the district for purposes of establishing venue. *MTEC, LLC v. Nash*, 2008 WL 4723483, at *7 (D. Or. Oct. 20, 2008).

We believe that Karrier does not have a regular and established place of business in Florida. The standard "regular and established place of business," is quite narrow: it involves more "than doing business," Karrier must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." *Hsin Ten Enter. USA, Inc.,* 138 F. Supp. 2d at 461.

Roblor does not contest that Karrier has no office in Florida, that it does not make demonstrations in Florida, and does not have a telephone number or address in Florida. (Karrier's Revised Mot. to Dismiss 9; Roblor's Resp. to Karrier's Revised Mot. to Dismiss 7). The only activity at issue with respect to Karrier's place of business is its website activity. Karrier's websites do not allow the purchase of products and are therefore passive. (Karrier's Revised Mot. to Dismiss Ex. 9;10). Nothing in the record shows that Karrier carries any business in Florida. Accordingly, we find that Karrier has not a regular and established place of business in Florida.

Consequently, we find that venue is also not proper in the Southern District of Florida.

### III.    CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that Karrier's motion to dismiss Roblor's complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) be **GRANTED** without prejudice to refiling in a court having personal jurisdiction over Karrier and in a district with proper venue.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 3rd day of June, 2009.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge