## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 08-21496-CIV-MORENO/TORRES

ROBLOR MARKETING GROUP, INC.,

      Plaintiff,

vs.

GPS INDUSTRIES, INC., *et al.*,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## INTELLIGOLF'S MOTION TO DISMISS FOR LACK OF
## PERSONAL JURISDICTION AND IMPROPER VENUE

This matter is before the Court on Defendant Intelligolf, Inc.'s ("Intelligolf")
Motion to dismiss Roblor Marketing Group, Inc.'s ("Roblor") Complaint for lack of
personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper
venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1]   [D.E. 68].   For the
following reasons, the Motion should be Granted.

### I.     BACKGROUND

#### A.     *Procedural Background*

On May 23, 2008, Roblor filed a Complaint against twelve defendants, including
Intelligolf, for infringement of the United States patent no. 5,507,485 (the "Patent")

---

[1]   On August 26, 2008, the Honorable Federico A. Moreno referred this case to
the undersigned Magistrate Judge to take all necessary and proper action as required
by law, with respect to any and all pretrial matters.  [D.E. 78].

in the Southern District of Florida.  The patent was issued on April 16, 1996 and features a portable device including GPS technology that enables users to, among other things, view golf courses and keep track of their shots and scores.

On August 22, 2008, Intelligolf filed a Motion to dismiss for lack of personal jurisdiction and improper venue.  [D.E. 68].[2]  Intelligolf alleges that the Southern district of Florida does not have jurisdiction over it pursuant to Florida's long-arm statute and jurisdiction over Intelligolf would not meet the requirements of constitutional due process.  [*Id.* at 5].  Additionally, Intelligolf contends that venue is improper pursuant to 28 U.S.C.A. § 1400(b) and 28 U.S.C.A. § 1391(c).  [*Id.* at 20].

On September 11, 2008, Roblor filed a Response in opposition, claiming that jurisdiction is proper because Intelligolf's activity satisfies Sections 48.193(1)(a); (b); (f); and 48.193(2) of Florida's long-arm statute.  (Roblor's Resp. to Intelligolf's Mot. to dismiss 8-13) [D.E. 96].  Roblor also contends that jurisdiction comports with constitutional due process.  [*Id.* at 13].  Roblor further maintains that venue is proper in this District.  [*Id.* at 21].  On September 17, 2008, Intelligolf filed a reply.  [D.E. 94].

Following a hearing held on these and other pending matters in the case, on December 11, 2008, this Court gave the parties the opportunity to file supplemental memoranda with respect to the Motions to dismiss for lack of jurisdiction and improper

---

[2]  This Motion was originally filed on August 15, 2008, and re-filed in a single filing pursuant to a request of the Clerk of the Court.  [D.E. 56; 57; 58].  This did not affect the Motion's timeliness.

venue no later than January 23, 2009.[3]  [D.E. 179].  On January 13, 2009, we granted Roblor's Motion for extension of time to complete jurisdictional discovery allowing the parties to conduct discovery through February 27, 2009 and directing Roblor to supplement its opposition to the pending motions to dismiss no later than March 13, 2009.  [D.E. 185].  On February 24, 2009, we entered an order on a Motion for clarification extending the jurisdictional discovery deadline to March 20, 2009 and the deadline for filing supplemental memoranda for all parties to April 3, 2009.  [D.E. 191]. Finally, on March 18, we issued an order granting Intelligolf and Karrier Communications, Inc. ("Karrier") an extension of time to file their supplemental memoranda until April 10, 2009. [D.E. 196].

While Roblor saw no need to file a supplemental memorandum, Karrier and Intelligolf jointly filed a sealed memorandum on the results of the jurisdictional discovery undertaken in support of their Motions to dismiss.  [D.E. 203-4].  The record on the pending motion is, therefore, now complete.  Neither party has requested an evidentiary hearing, and the Court finds that none is required given the absence of disputed material facts relevant to the jurisdiction and venue issues.

---

[3]   The Court also stayed the case pending resolution of the Patent and Trademark Office's reexamination process but exempted the pending issues from that stay.  [D.E. 177].

### B.   *Facts Material to the Motion*

Roblor is a corporation with a place of business located in Pompano Beach, Florida. (Roblor's Compl. 2). Roblor is the owner of all rights, title and interests in and to the Patent, including the right to sue. *Id.*

Intelligolf is a Delaware corporation formed in May 2007, with a place of business located in Cameron Park, California. (Intelligolf's Mot. to Dismiss 3; Ex. A; B; C). On June 1, 2007, Intelligolf acquired all rights, titles, and interests from Karrier in the Intelligolf software, as well as other related software (such as Intellitimer, Intelliswim etc.). (Intelligolf's Mot. to Dismiss Ex. D). Intelligolf is engaged in the business of marketing and selling Intelligolf products. *Id.* Michael Bryant, James Simpkins, and Craig Schmidt are Intelligolf's shareholders, and Craig Schmidt is also its sole employee. (Intelligolf's Mot. to Dismiss Ex. D; E; F). Intelligolf is only licensed to do business in California, and does not have an address, an office, or employees in Florida. (Intelligolf's Mot. to Dismiss 3; Ex. A; B; C). Intelligolf never had a physical presence in Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19). Intelligolf never directed advertising or marketing at Florida residents. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19).

Intelligolf, however, operates a website, that provides advertising of Intelligolf's products as well as marketing links to a number of resellers and distributors, who are not located in Florida. (Intelligolf's Mot. to Dismiss Ex. D; G; H). The Intelligolf software can be directly purchased from these resellers' and distributors' websites. *Id.*

Intelligolf's website is accessible to Florida residents.  (Intelligolf's Mot. to Dismiss Ex. D).

On September 2, 2008, a paralegal working for Roblor's counsel registered and ordered an Intelligolf Birdie Edition by accessing Intelligolf's website, following the active link to a reseller, and then purchasing the software from this reseller.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 1-A; B; C; D).  Intelligolf's website features free downloadable golf courses, including Florida golf courses.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-C).

On September 11, 2008, another individual, a scientific advisor working for Roblor's counsel, also registered and created an Intelligolf account on Intelligolf's website.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-A; B; C; D; E; F).  As a result of his registration, he received an automatically generated e-mail from Intelligolf confirming his registration and his enrollment into the Intelligolf newsletter program.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-A).  In order to create an account, he had to agree to a click-wrap license, providing that any suit arising out of the agreement should be brought only in a state or federal court of competent jurisdiction located in Sacramento, California.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-A).  He then navigated the website and found downloadable maps of Florida golf courses.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-B).

## II.    ANALYSIS

### A.    *Dismissal for Lack of Personal Jurisdiction*

Intelligolf alleges that this Court lacks personal jurisdiction because Intelligolf does not meet the requirements of the Florida long-arm statute and, in the alternative, due process prevents this Court from exercising jurisdiction over Intelligolf.  (Intelligolf Mot. to Dismiss 6; 12).

### 1.    *Applicable Law*

Federal Circuit Law governs the issue of whether a court has personal jurisdiction on a patent infringement claim.  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir.1995)).

Federal Rule of Civil procedure 12(b)(2) allows a dismissal of a complaint for lack of personal jurisdiction.  Fed. R. Civ. Pro. 12(b)(2).  "[I]n the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction."  *Elecs. For Imaging, Inc.*, 340 F.3d at 1349 (Fed. Cir. 2003) (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings."  *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993) (stating the burden of proof in a patent infringement action) (citing *Prentice v. Prentice Colour, Inc.*, 779

6

F. Supp. 578, 586 (M.D. Fla.1991)).  "If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint."  *Id.*

### 2.    *The Florida Long-Arm Statute*

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996) (citing *Cable/Home Commc'n v. Network Prod's*, 902 F.2d 829, 855 (11th Cir.1990)).

Roblor alleges that each of the following provisions of the long-arm statute apply in this case:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>> (b) Committing a tortious act within this state.
>> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>>> 1. The defendant was engaged in solicitation or service activities within this state; or
>>> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

Because we find insufficient minimum contacts exist between Intelligolf and Florida under the due process clause, and this finding is dispositive of the Motion to dismiss, we will assume that Roblor has satisfied the pleading requirements of the Florida long-arm statute.

### 3.   *Due Process*

If personal jurisdiction is sufficiently pled under the state statute, the Court must then determine whether jurisdiction satisfies the requirements of the Due Process Clause.   U.S. Const. amend. V; *see Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002).  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing   *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)).  "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citing *Int'l Shoe Co.,* 326 U.S. at 316 ).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's conduct and connection with the forum State have to be such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

These principles are applied to different forms of personal jurisdiction, specific and general jurisdiction. Specific jurisdiction attaches only to suits arising from a defendant's contact with the forum, whereas general jurisdiction can more broadly attach to suits unrelated to defendant's contacts with the forum. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 n.8-9 (1984). Roblor asserts both general and special jurisdiction over Intelligolf. (Roblor Resp. to Intelligolf Mot. to Dismiss 15, 16). We find that neither basis for jurisdiction exists.

(a) <u>*Specific Jurisdiction*</u>

Where specific jurisdiction is asserted, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp.*, 552 F.3d at 1332.

i. *Activity Purposefully Directed to the Residents of the Forum*

We agree with Intelligolf that the first prong of the inquiry, the existence of activities purposefully directed at residents of the forum, is dispositive. (Intelligolf's Mot. to Dismiss 13). The only contact that Intelligolf has with Florida is its website, which, at best, led to one sale in the state after the litigation ensued. That is hardly enough by any applicable measure.

9

In order to find jurisdiction based on the existence of a website, some courts have accepted that a "highly transaction-oriented website" may by itself give rise to personal jurisdiction, referring to the "sliding scale" analysis adopted by one district court. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). *Zippo Manufacturing* explained the sliding scale analysis as follows:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well [-]developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

This sliding-scale analysis assesses the sufficiency of minimum contacts by measuring the degree of activity or passivity of the website. If we strictly follow this analysis, Intelligolf's website occupies this "middle ground" and qualifies as "interactive." The website is not entirely active. Intelligolf does not sell the infringing software on its website but merely provide links to a number of resellers and distributors. Intelligolf's website is not passive either where the website offers passive

advertising of its products together with these active links that allow the user to purchase the necessary software.

When a website is interactive, the exercise of jurisdiction is determined by examining (1) "the level of interactivity" and (2) "the commercial nature of the exchange of information that occurs on the Web site." *Id.* at 1124. The level of interactivity, here, is low. Intelligolf's website invites the customers to use the resellers' and distributors' websites in order to buy the allegedly infringing products. The customers willing to buy cannot do so through Intelligolf's website itself. Intelligolf's website does not invite the customers to use Intelligolf's e-mail or telephone number to purchase the products. One aspect of the website is interactive: the possibility of creating an account. The creation of an account, in turn, allows Intelligolf to send advertising e-mails to its registered customers. In order to create the account, the account holder is required to agree to a click-wrap license, which provides that any suit arising out of the agreement should be brought only in a state or federal court of competent jurisdiction located in Sacramento, California. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-A). While the click-wrap license cannot bind a third party like Roblor, it nevertheless shows Intelligolf's intention not to avail itself of a jurisdiction based on the use of the accounts other than in the state of California. Therefore, we find that this interactive feature cannot, by itself, constitute a sufficient contact with the state Florida.

The nature of information, the second prong of the analysis of an interactive website under *Zippo*, on the other hand, is purely commercial. However, there is no

11

*exchange* of information regarding the sale of the software *per se* as the customers can access the information but cannot communicate with Intelligolf through Intelligolf's website.   Accordingly, with a poor level of interactivity and in the absence of commercial exchange of information, we find that personal jurisdiction would not be warranted under a pure sliding scale analysis.

However the Federal Circuit has not yet addressed what weight, if any, should be given to the sliding scale of interactivity analysis.  Other circuits have addressed the issue.

Some circuits have embraced this analysis.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (recognizing the *Zippo case* as a "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the sliding scale analysis to assess *general* jurisdiction, even though the Fifth Circuit later recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry" *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (finding that "the common thread, well stated by the district court in *Zippo,* is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'").

Some circuits have adopted the sliding scale of interactivity as one factor among others to define the purposeful availment factor.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (adopting and adapting the sliding

scale analysis); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002); *Lakin v. Prudential Sec.*, Inc. 348 F.3d 704, 711 (8th Cir. 2003) (holding that the "Zippo model is an appropriate approach in cases of specific jurisdiction").

Where the *Zippo* model has not been expressly adopted, some circuits, including the Federal Circuit, nevertheless have recognized the distinction between active, passive and interactive websites as one factor, among others, used to determine the appropriateness of personal jurisdiction over a defendant.   *See McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum ... Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004) (holding that "Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country"); *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (drawing the distinction between active, passive and interactive websites to assess general jurisdiction); *Trintec Indus., Inc.,*395 F.3d at 1281("Although [plaintiff] has shown that [defendant]'s websites contain some interactive features aimed at transacting business, it is unclear how frequently those features are utilized

or, indeed, whether any District residents have ever actually used [defendant]'s website to transact business").

While many circuits have adhered to the sliding scale analysis, others have opted for a more restrictive reading of the *Zippo* case. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (holding that while the sliding scale analysis may "help frame the jurisdictional inquiry in some cases ... 'it does not amount to a separate framework for analyzing internet-based jurisdiction.'... Instead, 'traditional statutory and constitutional principles remain the touchstone of the inquiry' ... As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations").

Finally, some circuits disfavor the use of the sliding scale analysis to assess personal jurisdiction. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510-511 (D.C. Cir. 2002) (opting for the traditional notions of personal jurisdiction when assessing general jurisdiction on the ground that"'Cyberspace' ... is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar. Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet").

We should note that the Eleventh Circuit has recently acknowledged the criticism surrounding the *Zippo* case:

> While many courts have utilized the *Zippo* test in one form or another, scholars have generally been critical of the *Zippo* construct. One commentator has argued that *Zippo*'s interactivity litmus test is

inconsistent with traditional due process analysis because it excludes all "passive" websites from supporting personal jurisdiction even though the level of interactivity is of minimal significance with respect to whether a defendant has directed the website towards the forum. A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts,* 2006 U. Ill. L.Rev. 71, 86-103 (2006). Rather than utilizing such an artificial approach, Professor Spencer argues that courts should simply apply traditional analysis-looking to whether (1) the defendant directed the internet activity into the state, (2) the internet contact gave rise to the cause of action, and (3) the exercise of jurisdiction is constitutionally reasonable. *Id.* at 109-11. Another commentator, although arguing that the traditional personal jurisdiction approach should yield in the Internet context, has noted that *Zippo*'s interactivity model is somewhat unpredictable and should be modified to preserve the constitutionally required "foreseeability" and "fairness" principles. *See* Reid, *supra* at 259-62. Under the proposed modified approach, a finding that the website was highly interactive for purposes of *Zippo* would only give rise to a presumption of purposeful availment, allowing a defendant to proffer evidence that it was not purposefully targeting the forum. *See id.*

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 2009 WL 330935, at *4 (11th Cir. 2009). While this opinion discussed the *Zippo* case and the criticisms surrounding it, it declined to express a firm opinion as to its applicability.

The district courts in the Eleventh Circuit are split on the issue. Some have fully applied *Zippo* as persuasive precedent. *See Alternate Energy Corp. v. Redstone*, 328 F. Supp.2d 1379, 1382 (S.D. Fla. 2004) (citing Florida courts having applied the *Zippo* analysis); *Miller v. Berman*, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003) (citing the *Zippo* case and concluding that "[i]n order to determine whether personal jurisdiction can be exerted over Defendants in this instance the Court must examine the nature of the interaction between Mr. Miller and Defendants over the Internet"); *Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 WL

4724495, at *8 (S.D. Fla Oct. 24, 2008) (citing *Zippo* and assessing jurisdiction pursuant to the nature of the defendant's website).  Other district courts have departed from the *Zippo* approach, arguing that "website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative." *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1125 (M.D. Fla. 2006).

We share in the criticism of over-reliance on the sliding scale of interactivity analysis.  The sliding scale offers little guidance in the case of a defendant running a website that falls in the middle ground.  Moreover, this test is likely to be too rigid with regards to the passive and active categories of websites.  Passive websites could very well target a specific forum state and give rise to personal jurisdiction.  Similarly, an active website, which does not target a forum state, should perhaps not give rise to personal jurisdiction by itself.  That is the outcome reached in the *Toys "R" Us* case. *Toys "R" Us, Inc.*, 318 F.3d at 454.  The Third Circuit found that the defendant's website, "while commercial and interactive," did "not appear to have been designed or intended to reach customers [in the forum state]." *Id.*  The website was entirely in Spanish, the prices based on foreign currency, and merchandise could only be shipped within Spain.  In that respect, the sliding scale analysis was inappropriate.

We find it significant that the *Zippo* court, as it was creating the sliding scale analysis, ultimately did not rely on it. *Zippo Mfg. Co.*, 952 F. Supp. at 1125-27; *Best Van Lines, Inc.*, 490 F.3d at 251 (2d Cir. 2007) (observing that the *Zippo* court relied on the actual interactions of the defendant with the forum residents).  From this it

seems that many courts may have given more dispositive weight to the sliding scale analysis than the *Zippo* court itself intended to do.

Critics of the *Zippo* sliding scale analysis advocate a return to purely traditional notions of personal jurisdiction. *See Gorman*, 293 F.3d at 510-511 (D.C. Cir. 2002); A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts,* 2006 U. Ill. L.Rev. 71, 86-103 (2006). We doubt, however, that the *Zippo* court meant to forgo these traditional notions to the exclusive control of the sliding scale analysis. To the contrary, *Zippo* did analyze whether the defendant purposefully availed itself of doing business in the forum state and pointed out that: "[t]raditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper ... Different results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. Accordingly, the sliding scale analysis should be used as a tool to determine the purposeful availment of a defendant to a forum but not as an exclusive "separate framework."[4]

---

[4] Judge Jordan from our Court appears to have taken that view in a case where the sliding scale analysis was cited to establish general jurisdiction over a non-resident defendant that maintained an interactive website. "Indeed, while the law may still be unsettled in the Eleventh Circuit, other circuits have required that for personal jurisdiction to be based on a website – even an interactive one – it must be shown that the owner of the website manifestly intended to target citizens of the forum state." *Estate of Fraser v. Smith,* 2007 WL 5007084, at *8 (S.D. Fla. Nov. 13, 2007) (dismissing case based on lack of personal jurisdiction despite the existence of the interactive website because there was no record of any targeting of Florida residents).

Given no clear holding on the issue from the Federal Circuit and the divergent outcomes reached among the circuits, we decline to find that our determination under the sliding scale analysis is dispositive. We should use it as a guidepost but also turn to analyze the purposeful availment requirement under a more traditional approach. The outcome of that broader traditional analysis, however, is the same.

To assess whether Intelligolf purposefully availed himself of the Florida forum, we need to analyze both its website activity as well as its actual interactions with the state of Florida. As we have seen, the actual interaction consists of one single sale in Florida. On its face, the website activity is not purposefully directed at Florida. The number of Florida golf courses featured is not greater than the number of any other state golf courses. Florida residents are not specifically targeted. On the record before us, there is only one account created by a Florida resident. The presence of active links on Intelligolf's website is not, and should not be, enough. We agree that "the fact that the website of a company that sells products in Florida can be reached via a link on Intelligolfs' website is too narrow a thread on which to find a meaningful 'contact' for the purposes of due process." *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007).

Finally, the key element to the due process analysis is foreseeability. "The defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. There must be some degree of predictability "that allows potential defendants to structure their primary conduct with some minimum assurance as to

where that conduct will and will not render them liable to suit." *Id.* In this case, Intelligolf could not have foreseen being haled in Florida. Intelligolf is not licensed to do business in Florida and has no actual interaction with Florida. Intelligolf has no knowledge of any sale in Florida prior to this law suit. There is no evidence in the record that Intelligolf has any offices, retail stores, agents, resellers and distributors in Florida. Intelligolf has never targeted Florida residents through an advertising campaign. It does not appear that Intelligolf hold any bank account or investments in Florida, nor paid taxes here. Intelligolf has not contracted with any internet service provider in Florida. It is simply not reasonable to find that Intelligolf could have predicted being haled in Florida due to the mere accessibility of its website throughout the country, at least without record evidence of regular and continuous use of that website by Florida customers, or without manifest attempts by Intelligolf to target those customers in Florida.

Accordingly, even though the analysis applicable to website activity for purposes of personal jurisdiction is not well-settled, our analysis concludes that the type of website that Intelligolf maintains does not give rise to specific personal jurisdiction in Florida regardless of how that sliding scale issue ultimately pans out.

Moreover, even assuming *arguendo* that the first prong of the traditional due process inquiry was met, we would still need to satisfy the second and third prongs to assert specific jurisdiction over Intelligolf. They too have not been met in this case.

*ii.   Intelligolf's Forum-Related Activities*

To assert specific jurisdiction, the claim asserted by Roblor must arise out of Intelligolf's forum-related activities.  However, there is no evidence of any forum-related activities by Intelligolf, except through its website.  Intelligolf cannot sell the infringing software through its own website, therefore Roblor could not have done so in Florida.  Roblor has not established that Intelligolf had resellers and distributors in Florida nor that it had any control over their activity in Florida.  Intelligolf's website does feature downloadable Florida golf courses, and the infringing software may have been used in Florida; however, Roblor has not presented any evidence of it.  Finally, the record does not show that Intelligolf's website advertising targets Florida.

Therefore we find that Intelligolf's Florida-related activities are insufficient to meet the second prong of this inquiry.

*iii.   Reasonableness and Fairness*

"With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*." *Avocent Huntsville Corp.*, 552 F.3d at 1332; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The five *Burger King* factors to weigh are: (1) "the burden on the defendant;"  (2) "the forum State's interest in adjudicating the dispute;"(3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest

in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.*

We find that the burden on Intelligolf to litigate in Florida would be substantial where Intelligolf is a small business with only three shareholders. We agree that for Craig Schmidt, who is the sole employee, to litigate this case in Florida may pose an unreasonable burden. Considering the very few contacts Intelligolf has with Florida, the state of Florida's interest in the issue is limited. Even though it would be more convenient for Roblor's counsel to obtain relief in Florida, this insignificant convenience is far outweighed by Intelligolf's burden to litigate here. The last factor does not weigh in favor of any party. In sum, the relevant factors weigh in favor of Intelligolf's position that jurisdiction over Intelligolf here would be neither reasonable nor fair.

### (b)   *General Jurisdiction*

"[A]n assertion of *general* jurisdiction requires that the defendant have continuous and systematic contacts with the forum state, and that such activity will confer [ ] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp.,* 552 F.3d at 1331-32 (quotations omitted). "[T]hese contacts must be 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" *In re Farmland Indus., Inc.*, 2007 WL 1018367, at *3 (M.D. Fla. March 20, 2007) (citing *Hockerson Halberstadt, Inc v. Propet USA, Inc.*, 62 Fed. Appx. 322, 337 (Fed. Cir 2003)).

21

There is *nothing* in the Motion to dismiss record evidencing Intelligolf's continuous and systematic contacts with Florida.  Intelligolf is not licensed to do business in Florida.  Intelligolf has no address, office, or employees in Florida. Intelligolf never had any physical presence of any kind in Florida.  (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19).  No advertising or marketing has been directed at Florida.  (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C-19). There is only one Intelligolf product identified as being sold in Florida.  (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C; 18-19; Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-A; B; C; D).  However, this product was not sold by Intelligolf, but by a reseller.  Additionally, this reseller is not located in Florida.  In any event, a single sale cannot meet the "continuous and systemic contacts" requirement.  *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008) (finding that "there was no basis for exercising general jurisdiction over the defendants [in the State of Washington] in light of the fact they had only made 12 sales" there, which reflected "far less than the required 'continuous and systematic' contacts").

Intelligolf's only continued contact with Florida, if any, is its website, which provides passive advertising of the Intelligolf products as well as marketing links to a number of resellers and distributors of Intelligolf products.[5]  (Intelligolf's Mot. to

---

[5]  The Fifth Circuit held that the *Zippo* analysis could be used to assess general jurisdiction.  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).  However, the Court later recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."  *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

Dismiss Ex. D; G; H).  Moreover, none of these resellers and distributors are located in Florida.  The downloadable golf courses maps featured by the website are not specifically targeting Florida residents.  (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2-C).  Accordingly, it appears that Florida customers are not specifically targeted by Intelligolf's website.  (Intelligolf's Mot. to Dismiss Ex. D).  The maintenance of a website that is not specifically directed at the customers of the state where plaintiff seeks jurisdiction cannot give rise to general jurisdiction.  *Campbell Pet Co.*, 542 F.3d at 884; *Trintec Indus., Inc.,* 395 F.3d at 1275; *Estate of Fraser,* 2007 WL 5007084, at *8.

Therefore, we find that Intelligolf does not have continuous and systematic contacts with Florida and that general jurisdiction cannot be asserted over Intelligolf.

And, accordingly, we find that under the due process clause we cannot exercise either specific or general jurisdiction over Intelligolf.  Intelligolf's motion to dismiss, based on lack of personal jurisdiction, must then be granted.

### B.    ***Dismissal Based Upon Improper Venue***

Having found that Roblor cannot assert personal jurisdiction over Intelligolf, we do not need to consider venue.  Moreover, both parties agree that the personal jurisdiction and the proper venue inquiries coalesce.  (Intelligolf's Mot. to Dismiss 20-21; Roblor's Resp. to Intelligolf's Mot. to Dismiss 21).  Indeed, pursuant to Rule 28 U.S.C.A. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C.A.

§ 1400(b).  Further, to determine venue in a suit against a corporation, § 1400(b) must be read in conjunction with the general corporation venue statute, 28 U.S.C.A. § 1391(c).  *VE Holding Corp.*, 917 F.2d at 1580 (Fed. Cir. 1990).  According to 28 U.S.C.A. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Therefore, "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction.  *Trintec Indus., Inc.,* 395 F.3d at 1280 (citing *VE Holding Corp.,* 917 F.2d at 1583 (Fed. Cir.1990)).  As we have determined that Intelligolf is not subject to personal jurisdiction in the Southern District of Florida, it is not a resident for purposes of § 1400(b) and venue would be improper.

### III.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that Intelligolf's motion [D.E. 68] to dismiss Roblor's complaint for lack of jurisdiction and improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), be **GRANTED** without prejudice to the complaint be refiled in a court having personal jurisdiction over Intelligolf and in a district with proper venue.  Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v.*

*Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 3rd day of June, 2009.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge